No. 22 April 14, 2016 63

IN THE SUPREME COURT OF THE
STATE OF OREGON

Rosa Aurelia Palacios ESPINOZA,
Personal Representative of the Estate of
Victor Andres Espinoza Horna, Deceased,
for her own benefit as the surviving spouse
and for the benefit of Micaela Ariana Espinoza
and Mariam Andrea Espinoza,
surviving children of the deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*
*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*
*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Erika Consuelo Machado MERINO,
Personal Representative of the Estate of
Juan Francisco Garcia Rubio, Deceased,
for her own benefit as the surviving spouse
and for the benefit of Macarena Garcia Machado
and Mariono Garcia Santolalla,
surviving children of the deceased,
and Arturo Benjamin Garcia Pinillos,
surviving father of the deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*
*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*
*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

July Marlene Churata FERNANDEZ,
Personal Representative of the Estate of
Christian Martin Querevalu Quiroz, Deceased,
for her own benefit as the surviving spouse and for
the benefit of Camila Milagros Querevalu Churata,
surviving child of the deceased,
and Freddy Quiroz Dulanto De Querevalu
and Rolandi Querevalu Suarez,
surviving parents of the deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*

*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Flor De Maria Gamboa ALVAREZ,
Personal Representative of the Estate of
Fernando Cesar Nunez Del Prado Reynoso, Deceased,
for her own benefit as the surviving spouse and for the
benefit of Caroline Anthuanet Nunez Del Prado Gamboa
and Fernando Junior Nunez Del Prado Gamboa,
surviving children of the deceased,
and Margarita Severiana Reynoso Quispe
and Ricardo Cesar Nunez Del Prado Saavedra,
surviving parents of the deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*
*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Flor Katherine Soto LICAN,
Personal Representative of the Estate of
Jose Luis Saldana Eustaquio, Deceased,
for her own benefit as the surviving spouse
and for the benefit of Joseph Saldana Soto,
Luiggi Saldana Soto, Miguel Angel Saldana Soto,
Maria Elizabeth Saldana Gutierrez,
and Alexandra Himena Saldana Gutierrez,
surviving children of the deceased,
and Amadeo Saldana Narro,
surviving father of the deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*
*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Olga Paulina Chiba QUISPE,
Personal Representative of the Estate of
Peter Michael Liza Chiba, Deceased,
for her own benefit as the surviving mother
and for the benefit of Jose Armando Liza Nunton,
surviving father of the deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*

*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Brenda Vilma Hoyle DE CASTRO,
Personal Representative of the Estate of
Miguel Max Castro Gutierrez, Deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*

*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Giovanna Patricia Otero DE VASQUEZ,
Personal Representative of the Estate of
Jhon Henry Vasquez Lopez, Deceased,
for her own benefit as the surviving spouse and
for the benefit of Angie Patricia Vasquez Otero,
Henry Gianpierre Vasquez Otero,
Karen Elizabeth Vasquez Otero,
and Jhon Henry Vasquez Otero,
surviving children of the deceased,
Pablo Wilfredo Vasquez Meza,
surviving father of the deceased,
and Catalina Lopez De Vasquez,
surviving mother of the deceased,
*Plaintiff-Appellant,*
*Respondent on Review,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*Defendant on Review,*
*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

(CC 090912350, 090912777, 090913294, 091015153,
091015154, 091217035, 100202814, 100303637;
CA A147028; SC S062903)

On review from the Court of Appeals.*

Argued and submitted September 15, 2015.

Thomas W. Sondag, Lane Powell PC, Portland, argued the cause and filed the brief for the petitioner. With him on the brief was David G. Hosenpud and Peter D. Hawkes of Lane Powell PC, Portland.

Richard S. Yugler, Landye Bennett Blumstein LLP, Portland, argued the cause and filed the brief for the respondent. With him on the brief was Robert B. Hopkins and Matthew K. Clarke, of Landye Bennett Blumstein LLP, Portland, and Arthur C. Johnson of Johnson, Johnson and Schaller PC, Eugene.

Cody Hoesly, Larkins Vacura LLP, Portland, filed the brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Justices, and Duncan, Judge of the Court of Appeals, Justice pro tempore.**

––––––––––––
\* Appealed from Multnomah County Circuit Court, Jerry B. Hodson, Judge. 266 Or App 24, 337 P3d 169 (2014).

\*\* Brewer and Nakamoto, JJ., did not participate in the consideration or decision of this case. Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

BALMER, C. J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.

**BALMER, C. J.**

This case arises from a helicopter crash in a remote part of Peru, which resulted in the deaths of everyone on board. Plaintiffs brought wrongful death actions in Oregon against Evergreen Helicopters, Inc. (Evergreen), an Oregon corporation that provided the helicopter and the pilot. Evergreen filed motions to dismiss plaintiffs' actions on the ground that, under the doctrine of *forum non conveniens*, Peru was the appropriate forum in which to litigate those cases. The trial court consolidated the cases and granted Evergreen's motions.[1] Plaintiffs appealed and the Court of Appeals reversed. Although it concluded that the doctrine of *forum non conveniens* is available in Oregon, the Court of Appeals held that the trial court erred as a matter of law because it made factual determinations that went to the underlying merits of plaintiffs' claims and failed to assess the materiality of the documentary and testimonial evidence with respect to the different claims in the complaint. *Espinoza v. Evergreen Helicopters, Inc.*, 266 Or App 24, 49-51, 337 P3d 169 (2014). The Court of Appeals further held that the trial court erred by failing to make the requisite findings, expressly or implicitly, as to the availability of evidence in Peru and failing to discuss what factors it considered in reaching its decision. *Id.* at 50-51. On review, we consider two issues: (1) whether the doctrine of *forum non conveniens* is available under Oregon law, and (2) if so, what standards guide its application. For the reasons discussed below, we conclude that *forum non conveniens* is part of the common law of Oregon and permits a trial court to dismiss or stay an action under certain circumstances when the ends of justice require it. We disagree in some respects with the Court of Appeals as to the standards that govern the application of *forum non conveniens*, but we agree with its decision vacating the trial court judgments and remanding the cases to the trial court.

I.   FACTUAL AND PROCEDURAL BACKGROUND

We state the facts based on the allegations in the pleadings, supplemented by additional facts in the record.

---

[1] As noted, plaintiffs originally filed eight separate complaints, which the trial court consolidated. For purposes of appeal and review in this court, all eight cases have been combined.

Plaintiffs are the appointed personal representatives of the families and estates of eight passengers who died in a helicopter crash in Peru. Defendant Evergreen, an Oregon corporation with its principal place of business in Oregon, owns and leases aircraft, including the helicopter that crashed in this case, and provides related services worldwide.[2] The crash occurred when the helicopter, which was transporting employees and subcontractors of a mining company to a remote Andean copper mining project, flew into a mountainside. The helicopter was being flown pursuant to a service contract between Rio Tinto Mining Peru S.A.C., the Peruvian subsidiary of a global mining and minerals company, and Helinka S.A.C., a Peruvian commercial aviation services provider. Pursuant to that contract, and other side agreements, Evergreen provided the helicopter, as well as pilots, mechanics, parts, and an on-site contract administrator to help coordinate the air transport service to and from the mining camp. The pilot in charge of the helicopter on the day of the crash was an Evergreen employee who had been provided to Helinka as a part of that arrangement. Although it is undisputed the helicopter was operating in inclement weather at the time of the crash, the parties disagree as to the cause of the crash, and in particular whether pilot error was to blame or whether mechanical problems might also have contributed.[3]

Plaintiffs filed civil actions against Evergreen and the pilot's estate in Multnomah County Circuit Court for the wrongful deaths of the deceased passengers, based on theories of direct and vicarious liability in

---

[2] In 2013, Evergreen International Aviation, the parent company of defendant Evergreen Helicopters, Inc., sold that company to Erickson Air-Crane, Inc., another aviation services provider based out of Portland, Oregon. The sale of Evergreen Helicopters has no impact on the issues before this court on review. However, the name of that company has since been changed to Erickson Helicopters, Inc. For purposes of clarity and to be consistent with the decisions of the courts below, we refer to defendant by its prior name.

[3] The parties also disagree as to who exercised operational control over the helicopter and supervisory authority over the pilot. Plaintiffs alleged in their complaints that Evergreen was in control of the helicopter and that the pilot was its employee and agent. Before the trial court, Evergreen disputed that characterization, and argued that Helinka had both operational control of the helicopter and supervisory authority over the pilot.

negligence.[4] Plaintiffs alleged that Evergreen, individually and through its agents, was negligent or grossly negligent in failing to "properly maintain, inspect, test and/or repair the subject helicopter," to properly train and supervise its crew, to properly navigate and operate the helicopter on the day of the crash, and to warn plaintiffs of the dangers associated with flying in adverse weather.[5] In addition, plaintiffs alleged, Evergreen had negligently entrusted the helicopter. Plaintiffs alleged that Evergreen's negligence, or gross negligence, in those various ways was a substantial factor in causing the helicopter crash and the deaths of their relatives.

Invoking the doctrine of *forum non conveniens*, Evergreen moved to dismiss plaintiffs' actions on the grounds that an adequate alternative forum was available in Peru and that the balance of private and public interests favored dismissal. Evergreen asserted that a Peruvian court would be better-situated to hear the cases for several reasons. Evergreen argued that litigating the actions in Oregon would be seriously inconvenient because "the overwhelming evidence relating to [plaintiffs'] claims for negligence" is in Peru and because crucial third-party witnesses are also located there. Evergreen noted that a view of the premises was unavailable in Oregon and asserted that litigating plaintiffs' actions here was likely to result in practical difficulties, due, for example, to the fact that translators would be required for many witnesses. Evergreen further asserted that it would be unable to implead Helinka as a third-party defendant in Oregon and that Peru had the strongest interest in the controversy, particularly since that is where the crash occurred, plaintiffs are Peruvian

---

[4] The trial court dismissed plaintiffs' claims against the pilot's estate for insufficient service of process and lack of personal jurisdiction. Plaintiffs do not challenge that decision on appeal.

[5] Seven of the plaintiffs filed nearly identical complaints and alleged, as noted, both that Evergreen was directly liable for its own negligence and that it was vicariously liable for the negligence of individuals working under its authority. The eighth plaintiff, de Castro, alleged only vicarious liability based on the negligent operation of the helicopter in Peru. The trial court granted Evergreen's motions to dismiss as to all eight actions without distinguishing between them. We express no opinion as to whether the differences between the allegations in de Castro's complaint and the others may be material to the trial court's *forum non conveniens* analysis on remand.

nationals and Peruvian law will most likely apply to their claims.

In response, plaintiffs argued first that the doctrine of *forum non conveniens* never has been expressly recognized in Oregon and that a court may not dismiss an action on that ground because under Oregon law, a court must exercise jurisdiction over a case that has been properly conferred. In the alternative, plaintiffs argued that even if that doctrine were available in Oregon, dismissal was not appropriate in their cases because the balance of private and public interest factors actually weighed strongly in favor of retaining jurisdiction here. Plaintiffs asserted that a substantial amount of the evidence relevant to the litigation of their claims is located in the United States, and particularly in Oregon, where Evergreen is headquartered and has its principal place of business. Plaintiffs argued that even if their actions were litigated in Peru, a view of the premises was unlikely given its remote location, and that wherever the trial was held, the parties would be relying on demonstrative evidence and expert testimony to convey information about the crash site to the jury. Noting that their complaints alleged both vicarious and direct liability claims against Evergreen, including that Evergreen had been negligent in installing, maintaining and testing mechanical systems on the helicopter, plaintiffs asserted that a substantial factor in the cause of the crash may have been defects in avionics installed by Evergreen in Oregon. As a result, plaintiffs asserted, Oregon has a strong interest in this litigation.

The trial court concluded that the doctrine of *forum non conveniens* is available and that Oregon trial courts have the "discretion to dismiss an otherwise properly filed case if the court determines that an adequate alternative forum exists and that trying the action elsewhere would best serve the convenience of the parties and the ends of justice." Applying that standard, the court dismissed plaintiffs' actions. The trial court issued a letter opinion setting out its conclusions. First, the court considered whether Peru provided an adequate alternative forum. Noting that plaintiffs had initially conceded that point in their briefing, before later arguing that the statute of limitations had run in Peru and that it therefore was not an adequate forum,

the trial court determined that Evergreen's offer to waive its statute of limitations defenses in Peru was sufficient to address that concern. The trial court then proceeded to "the weighing of a number of private and public interest factors to determine whether trying the action in Peru would best serve the convenience of the parties and the ends of justice." The trial court recognized that its analysis would "depend[] in large part on how one views the dispute between the parties." However, it did not make any express factual findings to support its conclusions or state how those findings would shape its analysis. Rather, the court summarily concluded:

> "The materials submitted by the parties persuade me that trial of this lawsuit will largely center on, and depend upon, witnesses and documents regarding circumstances in Peru at the time of the crash, rather than circumstances in Oregon or the United States."

The court did acknowledge that plaintiffs had pointed to evidence of "squawks" in the helicopter's navigational systems near the time of the crash and that discovery might reveal evidence of technical malfunctions attributable to Evergreen that would support the direct negligence claims. However, it declined "to base [its] decision on such possibilities, especially given the record that is before [the court]." The court concluded, without further elaboration, that "the private and public interest factors weigh in favor of dismissal," granted Evergreen's motion, and entered general judgments of dismissal without prejudice for all of the actions.[6]

---

[6] The trial court imposed certain conditions on the dismissal of plaintiffs' claims. It required that Evergreen submit to the jurisdiction of a Peruvian court and agree to be bound by any judgment entered there, that it waive certain statute of limitations defenses in Peru, and that it agree to make evidence in the United States available in Peru. Further, for the dismissal to be effective, the trial court required that the courts in Peru accept those conditions and that none of the cases be rejected there for lack of subject matter or personal jurisdiction. On review, neither party has asserted that the trial court erred in imposing conditions on the dismissals of plaintiffs' claims. In other jurisdictions, courts have deemed conditions similar to those imposed here permissible, and sufficient to address concerns about the adequacy of the proposed alternative forum. *See, e.g.*, *Paulownia Plantations de Panama Corp. v. Rajamannan*, 793 NW2d 128, 134-35 (Minn 2009) (trial court may dismiss action on *forum non conveniens* grounds even when adequacy of alternative forum is uncertain, if nonmoving party is protected by conditions attached to dismissal and holding that alternative forum was adequate in that case, where defendant agreed to submit to jurisdiction and waive all jurisdictional defenses).

Plaintiffs appealed and the Court of Appeals reversed in part. The Court of Appeals agreed with the trial court that *forum non conveniens* is available in Oregon. To articulate the standard that trial courts should apply in deciding whether to dismiss a case on that ground, the Court of Appeals drew from *Gulf Oil Corp. v. Gilbert*, 330 US 501, 67 S Ct 839, 91 L Ed 1055 (1947), and subsequent federal cases. Reviewing the trial court decision for abuse of discretion, the Court of Appeals held that the court did not err in concluding that Peru offered an adequate alternative forum,[7] but that it did err in its analysis of whether the relative inconvenience of trying plaintiffs' actions in Oregon warranted dismissal in favor of a Peruvian forum. The Court of Appeals first concluded that, in arriving at its decision, the trial court improperly made and relied on factual determinations that went to the merits of plaintiffs' claims. *Id.* at 48-49. Second, it determined that the trial court disregarded the significance of witnesses and evidence in Oregon that would relate to plaintiffs' direct negligence claims. Third, it faulted the trial court for failing to make any findings, implicit or express, about the availability of, or ease of access to, evidence in Peru. *Id.* at 50-51. Finally, it held that the trial court erred in not considering factors other than the availability of evidence, contrary to the test set out in *Gulf Oil*. However, because it concluded that the lack of explanation in the trial court's letter opinion prevented meaningful appellate review of that decision, the Court of Appeals vacated the dismissals and remanded the consolidated cases for reconsideration in light of its opinion. *Id.* at 51. Evergreen sought review, which we granted.[8]

---

[7] On appeal, plaintiffs argued that the Peruvian courts were inadequate due to "institutional corruption, discrimination against indigenous and poor people, and retaliation against plaintiffs who seek redress in Peru's legal system." Because plaintiffs did not raise those issues before the trial court, the Court of Appeals held that those issues were not preserved and declined to consider them. *See Espinoza*, 266 Or App at 47-48.

[8] Before the Court of Appeals, Evergreen challenged the exercise of appellate jurisdiction over all eight actions, because plaintiffs joined and filed a single notice of appeal, with only one of the eight judgments attached to that notice. That argument was rejected by the Appellate Commissioner of the Court of Appeals, and the Chief Judge of that court denied reconsideration. Evergreen again argues on review that ORAP 2.10(1), which provides that in consolidated cases "a separate notice of appeal must be filed as to each judgment," is a jurisdictional requirement such that plaintiffs' failure to file eight separate notices of

On review, Evergreen focuses on two issues. First, Evergreen argues that the Court of Appeals afforded too much deference to plaintiffs' choice of Oregon as the forum in which to litigate their claims. Evergreen contends that less deference is required in this case because plaintiffs are all Peruvian residents, relying on *Piper Aircraft Co. v. Reyno*, 454 US 235, 102 S Ct 252, 70 L Ed 2d 419 (1981), where the United States Supreme Court held that on a motion to dismiss for *forum non conveniens*, the ordinary presumption in favor of the plaintiff's forum choice applies with less force where the plaintiff is not a resident of that forum.[9] Evergreen argues that such a rule is appropriate, because there is no reason to presume that a forum is convenient to the plaintiff when the plaintiff is not a resident of that forum. Evergreen suggests that under the appropriate standard for non-resident plaintiffs, an action should be dismissed if it may be litigated more conveniently elsewhere. Dismissal is especially appropriate here, Evergreen claims, because Oregon's connection to this dispute is objectively weak.

Second, Evergreen disputes the Court of Appeals' statement that the trial court erred in making factual determinations that relate too closely to the "merits" of plaintiffs' underlying claims. Noting that the trial court never expressly stated that it was disregarding any evidence or that it had decided what that evidence might show, Evergreen asserts that the trial court did not improperly disregard those direct negligence claims that could have required discovery of witnesses and documents in Oregon. Evergreen further contends that even if the trial court did conclude that plaintiffs' direct negligence claims lacked merit and relied on that conclusion in weighing the relative advantages and obstacles

---

appeal deprives both the Court of Appeals and this court of jurisdiction. We agree with the orders below that ORAP 2.10(1) is not a jurisdictional requirement and that plaintiffs' combined notice of appeal was sufficient in this case.

[9] In both federal and state case law, plaintiffs that reside outside of the forum where an action is brought are referred to as "foreign." The plaintiffs in the reported cases are often foreign nationals, that is, residents and citizens of other countries. However, the term "foreign" can also apply to plaintiffs who are simply residents of different states within the United States. Here, we use the terms "non-resident" and "foreign" interchangeably to refer to all plaintiffs who reside outside of the forum state.

to a fair trial, it did not err in doing so. Rather, Evergreen asserts, resolving a motion to dismiss for *forum non conveniens* may require consideration of at least some aspects of the merits of a plaintiff's claims, and, as a practical matter, any preliminary view expressed by a trial court in disposing of a case on *forum non conveniens* grounds could not possibly interfere with a party's right to trial of disputed issues of fact in the underlying dispute.

In response, plaintiffs urge us to reject the doctrine of *forum non conveniens*. Noting that this court need not rely on federal precedents in deciding that common law issue, they contend that its origin is dubious and that it "is a parochial, xenophobic and outcome-determinative doctrine that permits reverse forum shopping by powerful corporations seeking to altogether avoid accountability in their home forum for transnational torts." Plaintiffs also argue that we should not recognize the doctrine because, under Oregon law, "there is no inherent discretionary authority to decline jurisdiction in damages actions over a local defendant in favor of another venue for the sake of convenience." Finally, plaintiffs contend that even if such authority does exist, significant policy reasons weigh against allowing courts to exercise it, and that, for that reason, whether courts should be allowed to stay or dismiss an action for *forum non conveniens* should be left to the legislature to decide.

In the alternative, plaintiffs urge us to affirm the Court of Appeals' articulation of how the doctrine of *forum non conveniens* should be applied under Oregon law. Plaintiffs assert that the degree of deference given to their choice to litigate in Oregon should not depend on their status as foreigners or their assumed motive in making that choice. To the extent that the court makes any presumption about the convenience of Oregon as the forum, plaintiffs contend, the court should presume that it *is convenient*, since defendant is located and operates its business here. Noting that Oregon courts are hardly overrun by plaintiffs from other countries and that advances in modern technology have reduced the burden of litigating transnational cases, plaintiffs argue that an action should be dismissed on the grounds of *forum*

*non conveniens* only in the rare circumstance where the defendant sustains its heavy burden to show that the plaintiff's choice of forum is "vexatious, harassing or oppressive to the defendant." Plaintiffs argue that the trial court failed to adhere to that standard and erroneously imposed a much less stringent burden on Evergreen.

Finally, plaintiffs argue that the trial court erred in analyzing the public and private interest factors set out in *Gulf Oil* and that, as a result, it struck an unreasonable balance in weighing those factors. Plaintiffs contend that the procedural posture of defendant's motion, as a motion to dismiss, required the trial court to assume the truth of all well-pleaded allegations and to construe disputed facts liberally in their favor. Pointing to the trial court's statement in its letter opinion that the substance of the case is "dependent on circumstances in Peru," plaintiffs argue that this shows that the trial court relied on factual conclusions going to the merits of their claims that are contrary to the well-pleaded allegations in their complaints, and that in the process, the trial court erred by "picking and choosing" which allegations and theories to consider when assessing the ease of access to relevant witnesses and documents in each forum.

Plaintiffs acknowledge that assessing the materiality of witness testimony and other evidence requires a degree of "entanglement with the merits," but they distinguish those kinds of determinations from judging whether a particular claim or theory of liability is likely to succeed. Plaintiffs argue that a trial court deciding a motion to dismiss for *forum non conveniens* may ascertain certain facts, such as where particular evidence is located, but that a trial court may not shape its assessment of the relative inconvenience of litigating an action in a particular forum according to its assessment of the strength of the various claims asserted. Plaintiffs argue that treating all claims and theories of recovery the same for purposes of weighing the materiality of the available evidence and the relative ease of access to the sources of that proof in each forum is particularly appropriate where, as here, the parties have yet to conduct merits discovery.

## II.   ANALYSIS

A.   *The Doctrine of* Forum Non Conveniens

A brief discussion of the origins and elements of the doctrine of *forum non conveniens* will provide context for our consideration of the issues on review. Generally, rules of personal jurisdiction and venue ensure that actions are litigated in an appropriate forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 292, 100 S Ct 559, 62 L Ed 2d 490 (1980) (jurisdictional due process requirement of "minimum contacts" is intended to protect defendant from burden of litigating in "distant or inconvenient forum"); *Kohring v. Ballard*, 355 Or 297, 312, 325 P3d 717 (2014) ("Jurisdiction refers to the authority of the court to hale a defendant into court, while venue concerns the particular location where it is appropriate for the court to exercise that authority."). In rare cases, however, jurisdiction and venue for an action are proper in a forum where litigating the action would be seriously inconvenient to the parties, witnesses, or the court. The doctrine of *forum non conveniens*—Latin for "inconvenient forum"—provides that, in such cases, "a court having jurisdiction may decline to exercise it on considerations of convenience, efficiency, and justice." *Kedy v. A.W. Chesterton Co.*, 946 A2d 1171, 1178 (RI 2008) (citing *AT & T Corp. v. Sigala*, 274 Ga 137, 138, 549 SE2d 373, 375 (2001)); *see also Restatement (Second) of Conflict of Laws* § 84, comment a (1971) ("The rule has been developed that a court, even though it has jurisdiction, will not entertain the suit if it believes itself to be a seriously inconvenient forum provided that a more appropriate forum is available to the plaintiff.").

The importance of *forum non conveniens* and the frequency with which courts have invoked that doctrine in dismissing certain actions have varied over time. Historically, restrictive jurisdictional rules tended to prevent more than one forum from being competent to adjudicate a dispute, and as a result, the rule that a court with jurisdiction might nonetheless decline to hear a case in favor of allowing a forum with concurrent jurisdiction to do so instead was infrequently used.[10] *See* Peter B. Rutledge, *With Apologies to*

---

[10] Prior to the development of modern jurisdictional rules, concurrent jurisdiction occurred most often in cases that arose from activity aboard a foreign

*Paxton Blair*, 45 NYU J Int'l L & Pol 1063, 1065-66 (2013) (describing history and evolution of *forum non conveniens* doctrine).

Nonetheless, the basic principles from which *forum non conveniens* originates are deeply rooted in the common law. It has long been an established rule that a court may sometimes refuse to consider a case on the merits, despite having jurisdiction over the parties and subject matter. *See* David Shapiro, *Jurisdiction and Discretion*, 60 NYU L Rev 543, 546-60, 547-60, 571-74 (1985) (describing a court's "traditional equitable discretion not to proceed"). Indeed, although the doctrine's Latin name was not commonly used in this country until the twentieth century, a court's authority to decline to hear a case involving foreign litigants or subject matter for prudential reasons has been recognized in the United States and Great Britain for nearly two hundred years. *See Gulf Oil*, 330 US at 504 (describing history of doctrine noting that "courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or nonresidents, or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal." (internal citations and quotation marks omitted)); Robert Braucher, *The Inconvenient Federal Forum*, 60 Harv L Rev 908, 909-18 (1947) (discussing history of *forum non conveniens* doctrine). As one United States district court in Maine noted in 1836:

> "The courts of this country are not bound to take jurisdiction of controversies between foreigners having no domicil in this country \*\*\*. It is a question of discretion to the court, whether it will take cognizance of the case, or not, and it cannot be charged with a denial of justice if it remits the parties, with their rights entire, to their domestic

---

vessel on the high seas. As a result, many of the early examples of the doctrine of *forum non conveniens* are found in cases involving actions of that type. Peter B. Rutledge, *With Apologies to Paxton Blair*, 45 NYU J Int'l L & Pol 1063, 1065-66 (2013). *See, e.g.*, *Willendson v. Forsoket*, 29 Fed Cas 1283, 1284, 1 Pet Adm 197 (DC Pa 1801) (declining for prudential reasons to exercise jurisdiction over contract case brought by sailor against captain); *Johnson v. Dalton*, 1 Cow 543, 548, 13 Am Dec 564, 1823 WL 1885, \*4 (NY Sup Ct 1823) (describing well-settled rule that courts have sound discretion to decline to exercise jurisdiction over cases arising from torts committed on high seas involving foreign litigants; affirming decision of trial court to hear case, because under the circumstances, "to send the plaintiff to a foreign tribunal would be a denial of justice.").

> forum. \*\*\* The question is, therefore, not one affecting the competency of the court, but it turns upon the expediency of taking jurisdiction in the particular case."

*The Bee*, 3 F Cas 41, 43, 1 Ware 332, 336 (D Me 1836) (internal citations omitted); *see also, e.g.*, *Tulloch v. Williams*, 8 Dunlop, 657 (Scot Sess 1846) (notwithstanding court's jurisdiction over matter, it would decline to hear case; forum was not convenient because evidence and witnesses were in Jamaica, Jamaican law was likely to apply, and defendant had agreed to answer any process served on him there).

By the latter half of the nineteenth century, as the development of modern jurisdictional rules allowed courts to expand their extraterritorial reach, the risk of jurisdictional competition between forums increased. Accordingly, so too did the importance of *forum non conveniens* as a mechanism for addressing cases where jurisdiction and venue were proper but the forum unsuitable. Rutledge, *Apologies*, at 1067; *see also* Paxton Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 Colum L Rev 1, 20-30 (1929) (describing examples of doctrine's use and evolution). Thus, as the basic contours of the doctrine crystallized, it was invoked with greater frequency by courts in a variety of jurisdictions. *See, e.g.*, *Western Railway Co. v. Miller*, 19 Mich 305, 315-316, 1869 WL 3643, \*6-7 (1869) (articulating version of rule similar to modern doctrine of *forum non conveniens*); *Pierce v. Equitable Life Assur. Soc.*, 145 Mass 56, 62-63, 12 NE 858, 863-64 (1887) (recognizing that court may decline to exercise jurisdiction over action against defendant foreign corporation if it would be gravely inconvenient due to location of parties and evidence, but retaining case because inconvenience in that instance not insuperable). [11]

---

[11] Another Scottish case, *Clements v. Macaulay*, 4 Macpherson, 583 (Scot Sess 1866), not only contains a well-developed discussion of the doctrine of *forum non conveniens*, as it was understood at the time, but turns on facts that are interesting from a historical standpoint. In that case, a merchant brought an action in Scotland against his business partners, seeking his share of the proceeds from a joint venture to provide supplies to the confederate army during the United States' Civil War. After the trial court refused to dismiss the action, the Scottish Court of Session reversed, holding that the action was more appropriately tried in the United States where the parties had entered into the arrangement and where most of the relevant evidence was located.

Today, *forum non conveniens* is an ingrained feature of the common law, having been adopted throughout the federal courts and in nearly every state, either by judicial decision or legislative mandate. *See Kedy*, 946 A2d at 1179-80 (noting recognition of doctrine in jurisdictions throughout United States). The defendant, as the moving party, bears the "heavy burden" to establish that an action should be dismissed, or stayed, on *forum non conveniens* grounds. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 US 422, 430, 127 S Ct 1184, 167 L Ed 2d 15 (2007). As an equitable doctrine reserved to the sound discretion of the trial court, however, there is no bright line rule for when a court should grant such a motion. *See Piper Aircraft*, 454 US at 249-50 (declining to lay down a "rigid rule" to govern *forum non conveniens* because "each case turns on its facts" and "[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." (internal citations and quotation marks omitted)); *see also Sinochem*, 549 US at 429 ("Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" (citing *Quackenbush v. Allstate Ins. Co.*, 517 US 706, 723, 116 S Ct 1712, 135 L Ed 2d 1 (1996))).

A court's exercise of discretion in granting or denying a motion to dismiss for *forum non conveniens* in most jurisdictions today is guided by the two-stage, multi-factor test set out by the United States Supreme Court in *Gulf Oil*, discussed below, which identifies a number of private and public considerations intended to help determine the relative advantages and costs of the available forums. *Restatement* at § 84 comment c; *see, e.g., Stangvik v. Shiley Inc.*, 54 Cal 3d 744, 751, 819 P2d 14, 17 (1991) (noting adoption of *Gulf Oil* test); *Lesser v. Boughey*, 88 Haw 260, 263-64, 965 P2d 802, 805-06 (1998) (same); *Myers v. Boeing Co.*, 115 Wash 2d 123, 128, 794 P2d 1272, 1275 (1990) (same); *see also, e.g., State ex rel. Ford Motor Co. v. Nibert*, 235 W Va 235, 239-40, 773 SE2d 1, 5-6 (2015) (describing West Virginia *forum non conveniens* statute, which adopts test similar to that in *Gulf Oil*).

At the first stage of the *Gulf Oil* test, the court considers whether there is an alternative forum in which the action may be tried. At that stage, the moving party is usually required to establish, as a threshold issue, that an alternative forum is available and capable of providing relief. *See Gulf Oil*, 330 US at 506-07 ("In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." (emphasis added)); *see also Carijano v. Occidental Petroleum Corp.*, 643 F3d 1216, 1225 (9th Cir 2011), *reh'g den*, 686 F3d 1027 (9th Cir 2012), *cert den*, 133 S Ct 1996 (2013) (under *Gulf Oil*, to prevail on motion to dismiss based on *forum non conveniens*, defendant must demonstrate existence of adequate alternative forum, meaning forum where defendant is amenable to process and that "offers a satisfactory remedy"); *but see, e.g.*, *Islamic Republic of Iran v. Pahliavi*, 62 NY2d 474, 484, 467 NE2d 245, 249 (1984) (although availability of another suitable forum is important consideration, it is not prerequisite to application of *forum non conveniens* doctrine).

At the second stage of the test, the court's discretion is guided by a balancing of the interests at stake. The court initially looks to the private interests of the parties to "weigh relative advantages and obstacles to fair trial." *Gulf Oil*, 330 US at 508. Some of those factors may include:

> "[T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive[;] *** [and] the enforceability of a judgment if one is obtained."

*Id*. In addition, the court may consider public-interest factors that are relevant to whether litigating in the plaintiff's chosen forum would serve the ends of justice. Public-interest factors identified in *Gulf Oil* include: the administrative difficulties and burden on the court in the plaintiff's chosen forum; the unfairness of imposing the expense of trial and the burden of jury duty on residents of a community with little or no connection to the controversy; the interest

in "having localized controversies decided at home"; and choice of law issues, including whether the court will be required to apply its own law, or that of another jurisdiction. *Id.* at 508-09. When, on balance, the relevant private and public interests "strongly favor" litigating the action in the alternative forum, the court may dismiss the complaint, or alternatively, in some jurisdictions, stay the action. *Id.* at 508; *see Stangvik*, 54 Cal 3d at 749-51 (under California law, court may either dismiss or stay action for *forum non conveniens*).

B.   *The Availability of* Forum Non Conveniens *in Oregon*

We next consider the threshold question presented: whether the doctrine of *forum non conveniens* is available in Oregon. Under the Oregon Constitution, rules of the common law that existed when the Constitution took effect in 1859 are incorporated into the laws of this state. *See* Oregon Const., Art 18, § 7 ("All laws in force in the Territory of Oregon when this Constitution takes effect, and consistent therewith, shall continue in force until altered, or repealed."); Laws of Oregon 1843-49, Act of June 27, 1844, Art III, § 1, p 100 (1853) ("[T]he Common Law of England and principles of equity, not modified by the statutes of Iowa or of this government, not incompatible with its principles, shall constitute a part of the law of this land."); *see also [Fulmer v. Timber Inn Restaurant and Lounge, Inc.](#)*, 330 Or 413, 424, 9 P3d 710 (2000) (unless modified or abrogated, applicable common law rules are binding on Oregon courts). As discussed, the doctrine that courts may decline to hear cases involving foreign subject matter or litigants for reasons of convenience and justice was well-established in 1859. Indeed, by that time, courts throughout the United States and Great Britain already were articulating the key elements of *forum non conveniens* and employing it with increasing regularity. *See, e.g.*, *McIvor v. McCabe*, 26 How Pr 257, 16 Abb Pr 319, 1863 WL 3736, *2 (NY Super 1863) ("Every court is primarily the judge of its own jurisdictional powers, and may assume them or decline them ***. Whether, therefore, the court will afford jurisdiction in cases of trespass occurring out of the State may be said to rest in discretion merely, and may be denied whenever substantial justice may require it ***.").

Recognizing those common law roots, this court has noted the existence of *forum non conveniens* and its relevance as a mechanism for addressing the question of where a particular action ought to be litigated. *See, e.g., Myers v. Brickwedel*, 259 Or 457, 464-65, 486 P2d 1286 (1971) (acknowledging doctrine); *Reeves v. Chem Industrial Co.*, 262 Or 95, 100, 495 P2d 729 (1972) (noting that "[c]ourts often refuse to hear a case because of *forum non conveniens* considerations" (internal citation and quotation marks omitted) (emphasis added)). Thus, although this court has never expressly held that *forum non conveniens* is part of Oregon law or reached the issue of whether a court may decline to hear a case on that ground, it has suggested as much. *State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or 381, 390 n 5, 657 P2d 211 (1982) (recognizing that *forum non conveniens* could apply to tort action where actual injury occurred outside forum and at least one party is foreign, but concluding that was not dispositive of personal jurisdiction in that case); *North Pacific v. Guarisco*, 293 Or 341, 356 n 12, 647 P2d 920 (1982) (suggesting that a trial court might consider factors such as whether there is an alternative convenient forum available and whether "center of gravity" for dispute is in that alternative forum in determining whether to exercise jurisdiction over action).

Notwithstanding that history, plaintiffs argue that we are now prevented from formally adopting the doctrine of *forum non conveniens*, because the dismissal or stay of an action on that ground is inconsistent with Oregon law. Plaintiffs first contend that our precedents require courts to proceed with actions where jurisdiction and venue are proper. That characterization of our case law is incorrect. We never have held that an Oregon court is *required* to adjudicate any case. *Cf. Couey v. Atkins*, 357 Or 460, 522, 355 P3d 866 (2015) (although trial courts have constitutional authority to consider certain moot cases, they are not required to adjudicate such actions, merely because there is jurisdiction). Rather, we have repeatedly recognized that for a variety of reasons, "a court is not always required to exercise such jurisdiction as it may possess." *Reeves*, 262 Or at 100. Under appropriate circumstances, a court may sometimes dismiss or stay

an action for entirely prudential reasons, regardless of the type of relief sought.

This court addressed the authority of a trial court to dismiss an action for prudential reasons in *Reed v. First Nat. Bank of Gardiner*, 194 Or 45, 241 P2d 109 (1952), an action to recover money damages stemming from an alleged fraud. There, the trial court dismissed the action for want of prosecution. *Id.* at 49. On appeal, the plaintiff argued that the trial court had acted without authority because it did not comply with a statute requiring notice prior to such a dismissal. *Id.* at 53-54. This court disagreed. Noting that the efficient and diligent litigation of disputes is an essential public policy interest, we held that "[t]he power of a court to dismiss an action for want of prosecution is an inherent power, and it exists independently of statute or rule of court." *Id.* at 55. Because the trial court's dismissal of the plaintiff's complaint was "fully justified" and therefore reasonable and appropriate under the circumstances, this court held that the trial court had not abused its discretion and affirmed the dismissal. *Id.* at 57.

Since *Reed*, we have confirmed that courts may dismiss or stay an action, without reaching the merits, for prudential reasons in a variety of situations. *See, e.g.*, *League of Oregon Cities v. State of Oregon*, 334 Or 645, 652, 56 P3d 892 (2002) (stating rule that even when a court has jurisdiction over an action pursuant to Uniform Declaratory Judgments Act, it may decline to exercise that jurisdiction on equitable grounds if it determines that another more appropriate remedy exists); *Oregon Medical Assn. v. Rawls*, 276 Or 1101, 1106, 557 P2d 664 (1976) (when constitutionality of statute is challenged, court may decline to entertain suit and leave issue for another day when issue is better presented in order "to most efficiently ration scarce judicial resources"); *Reeves*, 262 Or at 100–01 (upholding trial court's dismissal of action for breach of contract based on its conclusion that forum-selection clause was not unfair or unreasonable).

Plaintiffs argue that the doctrine of *forum non conveniens* is contrary to the principle of comity, which, they argue, requires Oregon courts to enforce legal obligations arising under foreign law and prohibits them from treating

an action differently because the litigants or subject matter originate outside the forum. Plaintiffs contend that our cases on the role of comity oblige trial courts to proceed with damages actions brought by foreign suitors.[12] To the extent that our cases recognize principles of comity and require Oregon courts to respect them, however, comity does not prevent courts from dismissing or staying an action brought by a foreign plaintiff for *forum non conveniens*. "Comity" refers to "[a] principle or practice among political entities (as countries, states, or courts of different jurisdictions) whereby legislative, executive, and judicial acts are mutually recognized." *Black's Law Dictionary* 324 (10th ed 2014); *see also Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 274, 40 P3d 506 (2002) ("Comity is a flexible concept that counsels us to enforce the laws of other states when, in the circumstances at hand, those laws neither offend international duty or convenience nor fail to protect the recognized rights of our citizens." (internal citations and quotation marks omitted)).

Although the concept of comity is consistent with the view that courts ought generally to recognize and enforce rights arising under foreign law or out of conduct in other jurisdictions, we have never considered that obligation to be absolute. *See State ex rel. Kahn v. Tazwell*, 125 Or 528, 544, 266 P 238, *motion to recall mandate den*, 126 Or 585 (1928), *overruled on other grounds by Reeves*, 295 Or 95 ("Under principles of comity the courts of one state will enforce rights arising in other states, *unless contrary to the laws or public policy* of the state in which such enforcement is sought, and will entertain suits brought by citizens of other states." (Emphasis added.)); *see also Reeves*, 262 Or at 100-01 (court may decline to enforce a contractual provision pointing to law of another jurisdiction if it would be "unfair or unreasonable"); *McGirl v. Brewer*, 132 Or 422, 445-46, 285 P 208 (1930) (on rehearing) (noting that the extent of

---

[12] In support of that view, plaintiffs cite *dicta* in *Bowles v. Barde Steel Co.*, 177 Or 421, 435, 164 P2d 692 (1945) that "courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness." Plaintiffs' reliance on *Bowles* is misplaced. The issue in that case was the extent to which state courts are obligated to entertain rights of action created by federal law. *See generally id.* at 428, 452-80. Taken in context, none of the passages from *Bowles* that plaintiffs cite stand for the propositions they assert.

comity afforded to courts in other jurisdictions is a matter of judicial policy and discretion).

Moreover, the principle of comity suggests that courts should treat their foreign counterparts with respect and not presume that the justice they offer is inherently inferior or inadequate, directly contrary to plaintiffs' position that the Peruvian courts are inadequate to decide this dispute. Rather, the respect that comity requires is consistent with the dismissal or staying of an action so that it may be litigated more conveniently and effectively in a forum abroad, particularly when that forum has a stronger interest in the underlying controversy. *See* Blair, *Doctrine*, at 6 n 34 ("To apply the doctrine of *forum non conveniens* to a particular case consequently does not involve ignoring the requirements of comity; on the contrary in some cases only by doing so can the requirements of comity be met."). *See, e.g.*, *Kotera*, 179 Or App at 273-5 (upholding trial court's exercise of discretion in declining, for reasons of comity and convenience, to hear case more appropriately suited to Japanese tribunal). In sum, there is no rule of decision by this court that prevents us from recognizing the doctrine of *forum non conveniens* as part of the common law of Oregon.

Plaintiffs next contend that *forum non conveniens* is inconsistent with the legal framework that the Oregon legislature has provided to address where certain actions may be litigated and when trial courts may change the place of trial. Because the legislature has the power to alter or repeal common law rules by statutory enactment, plaintiffs are correct that we must consider whether the doctrine of *forum non conveniens* is inconsistent with other applicable laws. *See Fulmer*, 330 Or at 424.

Plaintiffs and *amicus* argue that Oregon's venue statutes are inconsistent with the doctrine of *forum non conveniens*. Oregon's venue statutes do establish where certain actions may be litigated and allow a court to *transfer* an action to another venue within the state for a variety of reasons, including the convenience of the parties, but those statutes are silent as to whether, in the interest of justice and convenience, a court may *dismiss* or *stay* an action in favor of allowing it to be litigated in another forum outside

the state. *See* ORS 14.030 - 14.165 (statutes specifying where venue is proper and when venue transfer is authorized);[13] *cf.* Cal Civ Proc Code § 410.30 (authorizing court to stay or dismiss an action when it finds in the interest of substantial justice that dispute should be heard in forum outside state).

Plaintiffs and *amicus* argue that Oregon's venue statutes nonetheless prohibit *forum non conveniens* by negative implication. In support of that view, they cite *Elliott v. Wallowa County*, 57 Or 236, 239, 109 P 130 (1910), *abrogated by State ex rel. Douglas Cty. v. Sanders*, 294 Or 195, 655 P2d 175 (1982), where this court noted that "there is no authority given a circuit court to change the venue of a case except for the causes specified in the [venue] statute," and argue that because Oregon's statute provides only that a court may *transfer* venue on inconvenience grounds, a court may not *dismiss* or *stay* an action for the same reason. They contrast Oregon law with other states where legislatures have enacted statutes expressly providing that courts may dismiss or stay actions for *forum non conveniens. Cf.* La Code Civ Proc art 123 (providing that upon motion a court may dismiss certain actions predicated on acts or omissions originating outside the state for *forum non conveniens* and setting out standard for application of doctrine); W Va Code § 56-1-1a (same).

However, the enactment of a statute concerning a particular subject does not necessarily eliminate related common law rules. *See, e.g.*, *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 90-97, 689 P2d 1292 (1984) (enactment of statutory remedy for employment discrimination did not abrogate common law action for wrongful discharge);[14]

---

[13] ORS 14.110(1), which governs venue transfers, provides in part:

"The court or judge thereof may change the place of trial, on the motion of either party to an action or suit, when it appears from the affidavit of such party that the motion is not made for the purpose of delay and:

"* * * * *

"(c) That the convenience of witnesses and the parties would be promoted by such change[.]"

[14] *Superseded in part by statute*, Or Laws 2007 ch 903, *as stated* in *Gladfelder v. Pacific Courier Services, LLC*, No. 3:12-CV-02161, 2013 WL 2318840, at *2 (D Or May 28, 2013).

*Cordon v. Gregg*, 164 Or 306, 315-16, 101 P2d 414 (1940) (on rehearing) (common law rules relating to disposition of real property not abrogated by statutory scheme for intestate disposition, but remain in force as background rules to operate when statute does not address specific situation). Rather, for a pre-existing common law rule to be abrogated, it must be evident that that the legislature intended "to negate [that rule], either expressly or by necessary implication." *Holien*, 298 Or at 96-97 (citing *Brown v. Transcon Lines*, 284 Or 597, 610, 588 P2d 1087 (1978)).

Although the venue statutes set out certain procedural parameters for addressing the appropriateness of a particular forum, plaintiffs have offered nothing to suggest that those statutes were intended to eliminate the common law doctrine of *forum non conveniens*, either expressly, or by necessary implication. To the contrary, plaintiffs' contention is belied by the text of those statutes, which neither *require* a court to adjudicate every case that is properly before it, nor *prohibit* a court from taking other measures in response to concerns about whether a dispute may be fairly and effectively adjudicated in that forum. The general venue rule is permissive; it provides, "When the court has jurisdiction of the parties, it *may* exercise it in respect to any cause of action or suit wherever arising, except for the specific recovery of real property situated without this state, or for an injury thereto." ORS 14.030 (emphasis added); *but see Kohring*, 355 Or at 301 (notwithstanding permissive wording of venue statute, defendants have "right" to insist that action be tried in proper, rather than improper forum). As noted, although ORS 14.110 sets out conditions for when a court may *change* the place of trial, it does not prohibit the *stay* or *dismissal* of an action for similar reasons. *See* ORS 14.110 (providing grounds for change of venue). Except for specific and limited categories of cases, the venue statutes do not *mandate* the adjudication of an action in any particular venue. *Compare* ORS 14.040 (providing that certain actions relating to disposition of property "*shall* be commenced and tried in the county in which the subject of the action or suit, or some part thereof, is situated" (emphasis added)); ORS 14.050 (listing types of suits that must be brought and tried in county where the cause of action arose). The venue statutes

do not abrogate the common law doctrine of *forum non conveniens*.

Further, the law of venue is not the only source of judicial authority for addressing the appropriateness of a particular forum. Even if *forum non conveniens* were not a well-developed common law doctrine, courts would have authority to stay or dismiss an action for prudential reasons as an exercise of their inherent power to administer justice. *See Couey*, 357 Or at 491-93, 502 (courts have inherent judicial power, which is plenary and vested in them by Article VII (amended) of the Oregon Constitution).[15] For, as we have long recognized, *"courts of general jurisdiction *** have the inherent power* to do whatever may be done under the general principles of jurisprudence to insure to the citizen *a fair trial*, whenever his life, liberty, property or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require." *State ex rel. Ricco v. Biggs*, 198 Or 413, 430, 255 P2d 1055 (1953), *overruled in part on other grounds by State ex rel. Maizels v. Juba*, 254 Or 323, 460 P2d 850 (1969) (quoting *Crocker v. Justices of Superior Court*, 208 Mass 162, 179, 94 NE 369, 377 (1911)) (emphasis in *State ex rel. Ricco*). [16]

---

[15]  Article VII, (amended) section 1, provides in part:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law."

Although Article VII (amended) refers to slightly different judicial bodies as being vested with the "judicial power" than Article VII (original), the operative phrase "judicial power" is the same in both versions. *See Couey*, 357 Or at 491-92 (discussing text and history of original and amended versions of Article VII and differences between them).

[16]  That Article VII (amended) vests courts with the power to dismiss or stay cases for *forum non conveniens* is made evident by the historical and legal context of that provision. *See Couey*, 357 Or at 492-93 (because text of Article VII does not include any limitation on the exercise of the "judicial power," we examine its historical context and the common law for evidence of its boundaries). As noted, during the nineteenth century, courts were generally understood to be able, under the common law, to decline to hear certain types of actions that were otherwise proper. That power was not limited to cases where the litigants or subject matter were foreign, but could be exercised in a variety of circumstances. For example, if a case that was already underway became moot during the course of the litigation, courts had discretion to allow the case to continue, or, for prudential reasons, to dismiss it without reaching the merits. *See id.* at 500-01 (describing how judicial power was understood to confer authority on courts to "dispose[] of moot cases as a matter of prudence, discretion, and judicial economy" and cases applying that standard).

    The dismissal or stay of an action according to the doctrine of *forum non conveniens* is consistent with those principles, for, as an equitable doctrine, *forum non conveniens* is concerned at its core with "considerations of fundamental fairness and sensible and effective judicial administration." *Kedy*, 946 A2d at 1179 (citing *Adkins v. Chicago, R.I. & P.R. Co.*, 54 Ill 2d 511, 514, 301 NE2d 729, 730 (1973)); *see also id.* at 1180 (stating well-established principle that "[t]he inherent power of courts includes the authority to dismiss on the basis of *forum non conveniens*" and noting cases recognizing that power).

    This court has confirmed that, under appropriate circumstances, courts have inherent authority to change the place where a case will be tried even when the venue statutes do not expressly provide for it. In *State v. Nagel*, 185 Or 486, 202 P2d 640, *cert den*, 338 US 818 (1949), the defendant appealed his criminal conviction, assigning error to the trial judge's refusal to move his trial to another county. *Id.* at 497-98. The defendant asserted that a change of venue was necessary in his case because the alleged victim was the daughter of a prominent county judge, making it impossible for him to receive a fair trial in that same county. *Id.* at 500-01. This court disagreed and affirmed the judgment of the trial court. *Id.* at 520. Considering Oregon's venue statute as it then existed, and the various circumstances under which that statute authorized a court to change venue for trial, this court concluded that a change of venue was not authorized in that case. *Id.* at 497-506. However, this court declined to rest its decision on that lack of statutory authority. *Id.* at 506. Instead, disavowing the statement in an earlier case that a trial court may only change venue as provided by statute, this court confirmed that a trial court has inherent authority to change the place of trial to ensure the fairness of the proceedings. *Id.* at 505-06. The trial judge's refusal to grant the defendant's motion was affirmed, not because the trial court lacked authority to transfer, but because there was no evidence that the jury was biased or that the defendant had been deprived of a fair trial. *Id.* at 507-08. Although the issue raised in *Nagel* had particular constitutional implications due to the nature of the proceedings, the concerns underlying a court's decision to dismiss or

stay an action for *forum non conveniens*—the fair and effective administration of justice—are similar.

Finally, plaintiffs cite a number of scholarly articles that articulate various policy grounds for rejecting the doctrine of *forum non conveniens* and argue that we should refuse to recognize it in Oregon for those reasons.[17] One such policy argument is that *forum non conveniens* is no longer necessary as a standalone doctrine and that its objectives may be more effectively realized through jurisdictional rules. *See, e.g.*, Rutledge, *Apologies*, at 1069-71 (arguing that reduced jurisdictional competition between forums has lessened need for doctrine as means of channeling disputes between international fora); Simona Grossi, *Forum Non Conveniens as a Jurisdictional Doctrine*, 75 U Pitt L Rev 1, 32-36 (2013) (arguing that *forum non conveniens* should be reformulated as a jurisdictional rule); Markus Petsche, *A Critique of the Doctrine of Forum Non Conveniens*, 24 Fla J Int'l L 545, 573-79 (2012) (arguing that objectives of *forum non conveniens* are more appropriately addressed through jurisdictional rules). However, even if *forum non conveniens* is less pertinent today than previously, or may be addressed through changes to other legal rules, it does not follow that we should decline to recognize the doctrine entirely. As it stands today, civil legal proceedings may still be filed in a forum where jurisdiction and venue are proper, but where litigation of the action would be extraordinarily inconvenient and inappropriate. In such a case, a court may, and in fact should, exercise its power to dismiss or stay the case and allow the dispute to be resolved elsewhere.

Other scholars criticize the doctrine on the grounds that it is difficult to articulate a coherent standard for when it should be applied. As a result, its critics argue, *forum non conveniens* tends, at a minimum, to be applied inconsistently and, at worst, applied too often and for illegitimate and even discriminatory reasons. *See, e.g.*, Pamela

---

[17] In a related vein, plaintiffs and *amicus* argue that because the issue of whether *forum non conveniens* should be adopted in this jurisdiction is laden with policy considerations, we should defer to the legislature and decline to recognize it by judicial decision. As discussed above, legislative authorization is not required for a court to identify and apply the common law. We see no infirmity in recognizing the doctrine here.

Bookman, *Litigation Isolationism*, 67 Stan L Rev 1081, 1095 (2015) (criticizing frequency with which federal courts dismiss actions and arguing that doctrine has become a "most-suitable-forum" rule, where dismissal is based on a judge's belief, for virtually any reason, that trial elsewhere would be more appropriate); Grossi, *Jurisdictional Doctrine*, at 23-31 (criticizing indeterminacy and arbitrariness of doctrine); Petsche, *Critique*, at 559-72 (criticizing inconsistent application of doctrine and impermissible motivations behind dismissals). As a practical consequence, some argue, *forum non conveniens* has become a mechanism for "reverse forum-shopping":

> "[C]onvenience has little to do with why defendants seek a *forum non conveniens* dismissal. The real reason is to force the plaintiff to re-file the lawsuit in another country, whose substantive and procedural laws are more favorable to the defendant. No one seriously disputes that this is the real function of the current doctrine."

Walter Heiser, *Forum Non Conveniens and Choice of Law: The Impact of Applying Foreign Law in Transnational Tort Actions*, 51 Wayne L Rev 1161, 1167 (2005).

Although criticisms of the doctrine, as applied, may well have merit, there is nothing inherent in the *forum non conveniens* doctrine that makes it more prone to misuse than any other common law doctrine that requires the consideration and weighing of multiple factors. Rather, like any discretionary power, the decision to dismiss or stay an action for *forum non conveniens* is guided by legal principles that provide a range of permissible options. The narrowness with which those options are prescribed is a question of striking the right balance between uniformity and flexibility in the law—for, although we appropriately seek to avoid inconsistency, strict rules rigidly applied also can lead to unjust results in particular cases. The doctrine of *forum non conveniens* provides a means of striking an appropriate balance between the court's obligation to decide cases properly before it and its authority to dismiss or stay certain actions in order to protect the interests of fundamental fairness and effective judicial administration. To the extent that a trial court might dismiss actions for *forum non conveniens* too freely, that issue bears more on how we articulate the

legal principles that guide its application than on whether we should recognize the doctrine at all.

In conclusion, nothing in our cases or any applicable statute suggests that the doctrine of *forum non conveniens* is unavailable in Oregon. Although there may be legitimate reasons to restrict its application as a matter of policy, we do not find any of those considerations to be so weighty as to cause us to reject the doctrine entirely. Therefore, because *forum non conveniens* is a long-established part of the common law and no legislative enactment or decision of this court has altered or repealed that doctrine or the power of a court to dismiss or stay an action on that ground, we now recognize it as part of Oregon law and hold that, consistent with the standards announced in this opinion, courts in this state may dismiss or stay an action for that reason.

C.    *The Doctrine of* Forum Non Conveniens *Under Oregon Law*

We next consider the contours of the doctrine of *forum non conveniens* under Oregon law. As noted, most jurisdictions that have adopted the doctrine rely on the two-step framework described by the United States Supreme Court in *Gulf Oil* and subsequent cases to articulate the standards that should guide its application. Because the approach articulated in *Gulf Oil* offers a helpful way of categorizing and weighing the considerations pertinent to whether a dismissal or stay is appropriate in a particular case, we follow the majority of other jurisdictions in adopting the two-step analysis and non-exclusive list of factors set out in that opinion.[18]

---

[18]  In some jurisdictions, particularly those where *forum non conveniens* has been adopted by statute, the law provides that courts must consider each of a specified list of private- and public-interest factors. *See, e.g.*, *State ex rel. Mylan, Inc. v. Zakaib*, 227 W Va 641, 649-50, 713 SE2d 356, 364 (2011) (stating rule that courts must state findings of fact and conclusions of law as to each of eight factors listed in West Virginia statute authorizing dismissal of actions for *forum non conveniens*). Because we adopt *forum non conveniens* as a common law doctrine, we consider it appropriate to preserve the flexibility inherent in that doctrine by following the traditional rule that courts need only consider those factors that are relevant in a particular case. *See Piper Aircraft*, 454 US at 257 (stating general rule that analysis of private- and public-interest factors is within sound discretion of trial court and that court need only consider those factors that are relevant).

Federal precedent, however, does not control our interpretation of *forum non conveniens*. *See Am. Dredging Co. v. Miller*, 510 US 443, 453, 456 114 S Ct 981, 127 L Ed 2d 285 (1994) (*forum non conveniens* is "procedural rather than substantive;" adoption of doctrine is matter of local policy for states); *Hust v. Moore-McCormick Lines*, *Inc*., 180 Or 409, 415, 177 P2d 429 (1947) (where question is procedural, federal precedent is not controlling and Oregon courts may apply Oregon law). *Cf. PSU Association of University Professors v. PSU*, 352 Or 697, 710-11, 291 P3d 658 (2012) (when this court interprets Oregon law, federal precedents interpreting analogous federal laws are persuasive but not binding). Therefore, we also look to other sources of authority to determine what standards should guide Oregon courts in determining whether to dismiss or stay an action on that ground.

1.  *Moving Party's Burden of Proof Generally*

A defendant that moves to dismiss or stay an action for *forum non conveniens* must demonstrate that the legal standards for a dismissal or stay on that ground have been met. *See Sinochem*, 549 US at 430 ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."). Thus the burden rests on the defendant, as the moving party, to demonstrate that an alternative forum is available and adequate, and that the interests of convenience and justice weigh so heavily in favor of litigating the action in that forum that it is appropriate for the court to dismiss or stay the action. *See Kedy*, 946 A2d at 1183 ("It is well settled that the defendant carries the burden of persuasion at each stage of the *forum non conveniens* inquiry.").

Consistently with the standard for motions to dismiss under ORCP 21 generally, in considering a motion to dismiss for *forum non conveniens*, the trial court must "assume the truth of all well-pleaded facts alleged in the complaint and give plaintiff, as the nonmoving party, the benefit of all favorable inferences that may be drawn from those facts."[19] *Bradbury v. Teacher Standards and Practices*

_____

[19] We leave for another day whether a trial court would be obligated to accept as "well-pleaded" allegations that appear to be preemptively directed at a *forum*

*Comm.*, 328 Or 391, 393, 977 P2d 1153 (1999) (stating general standard applicable to a motion to dismiss); *see also*, *e.g.*, *Carijano*, 643 F3d at 1222 (factual allegations in plaintiff's complaint accepted as true for purposes of *forum non conveniens* motion); *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2014 UT 13, ¶ 3 n 1, 325 P3d 70, 73 (2014) (same); *Acharya v. Microsoft Corp.*, 189 Wash App 243, 251, 354 P3d 908, 912 (2015) (court must accept nonmoving party's evidence, including factual allegations in complaint, and all reasonable inferences that may be drawn from them, as true).

In order to resolve the motion, the trial court may find it necessary to make preliminary factual findings as to issues outside the pleadings. For example, the trial court may find it necessary to make findings pertaining to the adequacy of the proposed alternative forum, or to the availability and location of potentially relevant evidence. To do so, the trial court may consider facts asserted by the parties and resolve contested facts based on record evidence submitted by the parties. *Cf. [Black v. Arizala](#)*, 337 Or 250, 265, 95 P3d 1109 (2004) (in determining, on motion to dismiss, whether to exercise jurisdiction pursuant to venue agreement, court may consider both facts alleged in complaint and "matters outside the pleading, including affidavits, declarations and other evidence"). That is not to say, however, that the court necessarily must engage in extensive fact-finding and conduct hearings to resolve disputed factual issues. As noted by the Delaware Chancery Court, "[t]he entire purpose of the *forum non conveniens* doctrine is to relieve defendants from the undue burdens of litigating in an especially inconvenient forum. That purpose would be subverted if a defendant had to endure costly, protracted proceedings in order to avail itself of the doctrine in the first place." *Aveta, Inc. v. Colon*, 942 A2d 603, 609 (Del Ch 2008). In many cases, it may be sufficient for the parties to present their factual assertions to the court through affidavits.

---

*non conveniens* motion, for example, allegations that do not bear on the merits of any of the claims asserted but which relate only to the location and availability of evidence that is likely to be material to those claims. *Cf. Bliss v. Southern Pacific Co. et al*, 212 Or 634, 650-52, 321 P2d 324 (1958) (allegations in amended complaint not "well-pleaded;" they offered no material support for plaintiff's claims).

Plaintiffs argue that a trial court deciding a motion to dismiss for *forum non conveniens* should be prohibited from making any factual finding that "goes to the merits" of a plaintiff's claims. However, in the ordinary *forum non conveniens* case, evaluating the relevant private- and public-interest factors will always require some degree of "entanglement" with the merits. *See Van Cauwenberghe v. Biard*, 486 US 517, 528, 108 S Ct 1945, 1952, 100 L Ed 2d 517 (1988) (noting that to evaluate *Gulf Oil* factors, court "must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action" and likewise "consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum.").

In any case, the factual issues that the trial court actually resolves to decide a *forum non conveniens* motion will tend to be qualitatively different from those that determine the outcome on the merits. For the most part, the factual issues that go directly to the merits—for example, in a tort action sounding in negligence, the parties' relationship, the defendant's actions, and whether those actions were the cause of the plaintiff's injury—will be alleged in the complaint. Because the trial court must accept all of the plaintiff's well-pleaded allegations as true, it need not, and should not, decide those facts, even if they are disputed. On the other hand, the factual issues *outside of the pleadings* that the trial court may resolve to decide a *forum non conveniens* motion ordinarily will concern, for example, the condition of the judiciary in the proposed alternative forum, the enforceability of a judgment from that forum, and the ease or difficulty of obtaining evidence there, as compared to the forum where the plaintiff filed its action.

Finally, even when a factual issue does bear directly on the merits, making factual findings as to issues outside of the pleadings for purposes of deciding a *forum non conveniens* motion does not violate "a party's right to trial on disputed questions of material fact." *See Black*, 337 Or at 265. Simply

put, determining whether to stay or dismiss an action for *forum non conveniens* "does not entail any assumption by the court of substantive law-declaring power." *Sinochem*, 549 US at 433 (internal citations and quotation marks omitted). For that reason, a trial court's factual findings made for the purpose of deciding a *forum non conveniens* motion are distinct from any finding on the merits. As in other circumstances where the trial court makes such preliminary findings, those findings do not constitute a valid and final determination as to any issue, and therefore cannot have any preclusive effect on a plaintiff's underlying claims. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993) ("Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and *final determination* in a prior proceeding." (Emphasis added.)); *see also Vasquez v. YII Shipping Co., Ltd.*, 692 F3d 1192, 1198-99 (11th Cir 2012) (concluding that factual determinations made by Florida court in dismissing action for *forum non conveniens* had no preclusive effect; dismissal on that ground did not bar plaintiff from litigating same claims and legal theories in federal court). Therefore, although a trial court is required to accept the plaintiff's well-pleaded allegations, there is no rule barring the court from making any additional preliminary findings, as necessary, for purposes of deciding a *forum non conveniens* motion.

### 2. *Step One: Adequacy of Alternative Forum*

As noted, at the first step of the *Gulf Oil* test, the court must determine, drawing on the facts alleged in the complaint and on other findings as necessary, whether there is an adequate alternative forum in which to try the action. *See* 330 US 506-07 (*forum non conveniens* "presupposes at least two forums in which the defendant is amenable to process" and "furnishes criteria for choice between them"); *Piper Aircraft*, 454 US at 254 n 22 ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum."). At this first step, most jurisdictions require the moving party to establish that an alternative forum is available and capable of providing the plaintiff with relief. *See Restatement* § 84 comment c (one of most important factors in determining whether to dismiss action for *forum non conveniens* is whether "a suitable forum

is available to plaintiff"; ordinarily, "the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states."); *Nemariam v. Fed. Democratic Republic of Ethiopia*, 315 F3d 390, 392-95 (DC Cir 2003) (adequacy of alternative forum must be established as prerequisite; reversing dismissal of action because defendant was "unable to substantiate its claim that [plaintiff] will receive a remedy" in the alternative forum).

We agree with the majority of jurisdictions that establishing the adequacy of the proposed alternative forum is a threshold requirement. In our view, it would be contrary to the ends of justice to force a plaintiff into another forum if the result would be to deprive the plaintiff of a remedy entirely. *See Mace v. Mylan Pharm., Inc.*, 227 W Va 666, 676, 714 SE2d 223, 233 (2011) ("Undeniably, the interest of justice would not be served, nor would a plaintiff be convenienced, if an action over which a court in this state had proper jurisdiction was dismissed in favor of an alternate jurisdiction in which the remedy provided is so clearly inadequate or unsatisfactory that it is no remedy at all.").

In considering the adequacy of the proposed alternative forum, the focus of the court's inquiry is on the sufficiency of the proposed alternative forum from the plaintiff's perspective. To be adequate, the alternative forum must be one in which the defendant is amenable to service of process, where the courts would have jurisdiction, and where the law and the judicial system are capable of providing the plaintiff with meaningful redress. *Piper Aircraft*, 454 US at 250, 254-55, n 22.[20] That means that the plaintiff is not prevented by some procedural bar from filing its action (for example, by the running of the applicable statute of limitations), that courts in that forum offer a reasonably comparable means of redress and that those courts are not "so fraught with corruption, delay and bias as to provide no remedy at all." *Carijano*, 643 F3d at 1227 (internal citations omitted); *see also Piper Aircraft*, 454 US at 250, 254 n 22 (noting that

_____

[20] Because of the facts of this case, we focus primarily on situations where the proposed alternative forum is outside the United States, although the doctrine also may be applicable where the alternative forum is a court in another state or territory of the United States.

where applicable law in alternative forum is "clearly unsatisfactory," such as when it fails to provide plaintiff any comparable cause of action, it may be inadequate);[21] *Nemariam*, 315 F3d at 395 ("While a more limited recovery than is available in the plaintiff's forum of choice does not automatically make the alternative forum inadequate, we fail to see how an alternative forum in which the plaintiff can recover nothing for a valid claim may also be deemed adequate.").

One way that an alternative forum may be inadequate is if a judgment obtained in that forum would be unenforceable.[22] The defendant, for example, may have few assets in the alternative forum, rendering any judgment obtained in that jurisdiction meaningless unless the plaintiff can enforce its judgment elsewhere. *See generally* Christopher Whytock & Cassandra Burke Robertson, *Forum Non Conveniens and the Enforcement of Foreign Judgments*, 111 Colum L Rev 1444 (2011) (describing "transnational justice gap" whereby plaintiffs may be prevented from obtaining redress in any forum). If, in such a case, the court determines that the judicial system in the alternative forum fails to comport with minimum standards of due process, such that its judgments would be unenforceable where the defendant's assets are located, that forum is inherently inadequate and the defendant's motion will fail at this first step. *See* ORS 24.360 (setting out standards for recognition of foreign money judgments and circumstances under which Oregon court may refuse to do so).[23]

---

[21] Whether the substantive law applied in plaintiff's chosen forum will actually differ from that which would apply in the proposed alternative forum, of course, will depend on a choice-of-law analysis, which a trial court deciding a *forum non conveniens* motion may be unsuited, or unable, to resolve. *See, e.g.*, *D'Agostino v. Johnson & Johnson, Inc.*, 115 NJ 491, 496-97, 559 A2d 420 (1989) (it was inappropriate for trial court to resolve motion to dismiss for *forum non conveniens* on ground that change in law due to litigating in alternative forum would be unfavorable to plaintiff; without discovery, there were insufficient facts from which to determine what law would apply to action).

[22] The potential enforceability of a judgment obtained in the proposed alternative forum is identified in *Gulf Oil* as a private interest factor to be weighed at the second step of the court's analysis. For the reasons discussed, we conclude that that issue also is relevant at this first step.

[23] The Uniform Foreign-Country Money Judgments Recognition Act, adopted in Oregon, sets forth a wide range of circumstances under which a court may refuse to enforce a judgment obtained in another country, including:

Notwithstanding the defendant's burden, the mere *possibility* that the alternative forum may be less favorable to the plaintiff is not alone sufficient to render that forum inadequate for *forum non conveniens* purposes. Once the defendant makes a showing that the alternative forum is adequate, the plaintiff must offer some evidence that would substantiate the claim that it is not. *See Leon v. Million Air, Inc.*, 251 F3d 1305, 1312-13 (11th Cir 2001) (although defendant has ultimate burden to establish adequacy of alternative forum, plaintiff asserting that forum is inadequate due to corruption or delay must substantiate those allegations); *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F Supp 2d 546, 554 (SDNY 2013), *aff'd*, 559 F App'x 58 (2d Cir 2014) (notwithstanding defendant's burden of persuasion, plaintiff must produce evidence of corruption, delay or lack of due process in alternative forum; "conclusory submissions," "bare denunciations" and "sweeping generalizations" about forum's legal system insufficient to overcome defendant's showing of adequacy (internal citations and quotation marks omitted)). Once evidence is presented that calls the adequacy of the proposed alternative forum into doubt, however, it is the defendant's burden to persuade the court that the facts are otherwise. *Leon*, 251 F3d at 1312. *See also, e.g., Bridgestone/Firestone N. Am. Tire, LLC v. Garcia*, 991 So 2d 912, 917 (Fla Dist Ct App 2008), *rev den*, 8 So 3d 1133 (Fla 2009) (where evidence was in conflict as to whether alternative forum was available and adequate, trial court did not err in concluding that defendant failed to carry burden to as to first step of *forum non conveniens* test).

### 3. Step 2: Weighing the Private and Public Interests

At the second step of the *Gulf Oil* test, the court considers and balances the relevant private and public interests

---

"(g) The judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment; or

"(h) The specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law."

ORS 24.360(3)(g), (h). Further, an Oregon court is *prohibited* from recognizing any judgment from a foreign country where "the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law." ORS 24.360(2)(a).

to determine whether, on the whole, those interests justify granting the defendant's motion. *Gulf Oil*, 330 US at 508. As noted, although the doctrine of *forum non conveniens* "leaves much to the discretion of the court," the exercise of that discretion is not unlimited. *Id.* Rather, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*; *see also Carijano*, 643 F3d at 1224 (noting that *forum non conveniens* is "an exceptional tool to be employed sparingly" (internal citations and quotation marks omitted)). What it means for the balance of interests to be "strongly in favor of the defendant," however, varies across jurisdictions and, indeed, is difficult to articulate with precision.

For the reasons set out below, we conclude that in Oregon, a trial court may dismiss or stay an action for *forum non conveniens* only when the moving party demonstrates that there is an adequate alternative forum available, and that the relevant private and public-interest considerations weigh so heavily in favor of litigating in that alternative forum that it would be contrary to the ends of justice to allow the action to proceed in the plaintiff's chosen forum.[24]

Courts in different jurisdictions have taken varying approaches to defining how strongly the balance of interests must favor the alternative forum for an action to be dismissed or stayed on *forum non conveniens* grounds. Under federal law, a district court may grant a defendant's *forum non conveniens* motion "when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish *** oppressiveness and vexation to a defendant *** out of all proportion to plaintiff's

---

[24] *Amicus* urge us to impose an even more stringent standard that would allow an action to be dismissed only if the balancing of relevant interests shows that the plaintiff brought its action in that forum with the *intent* of "vexing, harassing or oppressing" the defendant. We reject that proposal for two reasons. First, whether litigating an action in the plaintiff's chosen forum would be seriously inconvenient and contrary to the interests of justice does not turn on the plaintiff's intent in bringing its action in that forum. Second, the abuse and harassment of a defendant by filing in a forum that is inconvenient for that party is readily addressed by the court's analysis of the relevant private- and public-interest factors. *See Carijano*, 643 F3d at 1228 ("A party's intent in joining a lawsuit is relevant to the balancing of the *forum non conveniens* factors only to the extent that it adds to an overall picture of an effort to take unfair advantage of an inappropriate forum").

convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Am. Dredging Co.*, 510 US at 447–48 (quoting *Piper Aircraft*, 454 US at 241) (ellipsis and brackets in original).

In other jurisdictions, the moving defendant must demonstrate that litigating in the plaintiff's chosen forum would be so "unduly inconvenient, expensive or otherwise inappropriate" that it would cause "overwhelming hardship" or would effectively deprive one party "a meaningful day in court." *See, e.g.*, *Aveta*, 942 A2d at 608 ("[T]o achieve a stay or dismissal for forum non conveniens, a defendant must demonstrate that litigating in the plaintiff's chosen forum would present an overwhelming hardship."); *Christian v. Smith*, 276 Neb 867, 876, 759 NW2d 447, 457 (2008) ("[A] forum is seriously inconvenient only if one party would be effectively deprived of a meaningful day in court.").

Still other courts have stated that a defendant need only demonstrate that the alternative forum is *more* convenient and that the balance of circumstances otherwise "strongly favors" that forum. *See, e.g.*, *First Am. Bank v. Guerine*, 198 Ill 2d 511, 518, 764 NE2d 54, 59 (2002) (An action may be dismissed for *forum non conveniens* if defendant demonstrates "that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties" and that "the balance of factors strongly favors transfer.").

Considering those variations, we conclude that an action should be stayed or dismissed for *forum non conveniens* only when the ends of justice require it. It is an established rule that a plaintiff has the right to seek redress in any forum where subject matter and personal jurisdiction can be established and where venue is proper, and that if multiple forums are available, the plaintiff may choose from those forums available to it. *See Cortez v. Palace Resorts, Inc.*, 123 So 3d 1085, 1094 (Fla 2013) ("[I]t is axiomatic that the plaintiff has the right to choose the forum."); *Sales v. Weyerhaeuser Co.*, 163 Wash 2d 14, 19, 177 P3d 1122, 1124 (2008) ("A plaintiff has the original choice to file his or her complaint in any court of competent jurisdiction."); *see also*

*Van Dusen v. Barrack*, 376 US 612, 633-37, 84 S Ct 805, 11 L Ed 2d 945 (1964) (recognizing and discussing plaintiff's venue privilege in federal context). In light of those principles, the role of *forum non conveniens* is limited. It is "not a 'doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Carijano*, 643 F3d at 1224 (quoting *Dole Food Co., Inc. v. Watts.*, 303 F3d 1104, 1118 (9th Cir 2002)). Likewise, as the Connecticut Supreme Court has noted, *forum non conveniens* may not be used by defendants to circumvent the plaintiff's venue right in order to obtain a more favorable forum generally:

> "[A court] cannot exercise its discretion [to dismiss for *forum non* conveniens] in order to level the playing field between the parties. The plaintiff's choice of forum, which may well have been chosen precisely because it provides the plaintiff with certain procedural or substantive advantages, should be respected unless equity weighs strongly in favor of the defendant."

*Picketts v. Int'l Playtex, Inc.*, 215 Conn 490, 501, 576 A2d 518, 524 (1990) (internal citations and quotation marks omitted). *See also Restatement* § 84 comment c ("[S]ince it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons."). Rather, *forum non conveniens* serves as a corrective mechanism to be employed only when allowing an action to proceed in the chosen forum would jeopardize the interests of "fundamental fairness" and "sensible and effective judicial administration." *Kedy*, 946 A2d at 1179.

Evergreen argues that we should afford less deference to a plaintiff's choice of forum when the plaintiff, or the real party in interest, resides outside that forum. Such a rule is appropriate, Evergreen contends, because the purpose of *forum non conveniens* is to ensure that actions are tried where they are convenient and when a plaintiff is foreign to the forum where it files suit, it is less reasonable to presume that it is convenient for the plaintiff to litigate there. *See Piper Aircraft*, 454 US at 255-56 (holding that the "ordinarily strong" presumption in favor of the plaintiff's choice of forum "applies with less force" when the plaintiff has not chosen its home forum and that in that circumstance, "the plaintiff's choice deserves less deference"). We

recognize that a majority of jurisdictions do adhere to such a rule. However, the Washington Supreme Court, considering the doctrine of *forum non conveniens* under its own state law, has rejected that approach entirely. *See, e.g.*, *Myers*, 794 P2d at 1280-81 (expressly declining to adopt *Piper Aircraft* "lesser deference" rule because it lacks well-reasoned support and is unnecessary to ensure equitable result). And courts in other states have rejected it in part. *See, e.g.*, *Cortez*, 123 So 3d at 1094 (rejecting *Piper* "lesser deference" rule with respect to plaintiffs who are residents of other states); *Kennecott Holdings Corp. v. Liberty Mut. Ins. Co.*, 578 NW2d 358, 361 (Minn 1998) (rejecting *Piper* "lesser deference" rule for United States citizen plaintiffs because "[t]o accord less deference to the choice of forum of a United States citizen because the plaintiff is not a resident of Minnesota simply defies fairness and logic.").

　　We agree with the Washington Supreme Court that there is no principled reason to vary the degree of deference afforded to the plaintiff's choice of forum based on where the plaintiff, or real party in interest, resides. As noted, we defer to a plaintiff's choice not because it is assumed to be convenient, but because it is the plaintiff's right to choose from those forums that are available to it. Moreover, under the standard that we have articulated, whether an action should be dismissed or stayed for *forum non conveniens* turns not on whether that forum is convenient for the *plaintiff*, but on whether litigating there would be so inconvenient generally—for litigants, third parties, and the court—that the court ought to override the plaintiff's choice. *Cf. First Am. Bank*, 198 Ill 2d at 518 (defendant cannot meet its burden under *forum non conveniens* doctrine by "assert[ing] that the plaintiff's chosen forum is inconvenient to the plaintiff"); *Ison v. E.I. DuPont de Nemours & Co.*, 729 A2d 832, 846 (Del 1999) (overarching factor that court must consider in *forum non conveniens* analysis is substantial hardship to *defendant*). The answer to that question, and whether a plaintiff's place of residency is even relevant, is fact-specific and will vary from case to case.

　　In sum, considering the nature of *forum non conveniens* as an extraordinary equitable remedy and the deference owed to every plaintiff's forum choice, we hold that

a trial court may dismiss or stay an action for *forum non conveniens* only when the moving party demonstrates that there is an adequate alternative forum available, and that the relevant private and public-interest considerations weigh so heavily in favor of litigating in that alternative forum that it would be contrary to the ends of justice to allow the action to proceed in the plaintiff's chosen forum. *See Aveta*, 942 A2d at 608 (grant of *forum non conveniens* motion permitted only when hardship to defendant is "overwhelming"); *Adkins v. Hontz*, 280 SW3d 672, 676 (Mo Ct App 2009) ("The doctrine [of *forum non conveniens*] is to be applied with caution and only upon a clear showing of inconvenience and when *the ends of justice require it*." (internal citations and quotation marks omitted) (emphasis added)); *Christian*, 276 Neb at 876 (forum is "seriously inconvenient" such that dismissal for *forum non conveniens* is appropriate when defendant would be "deprived of a meaningful day in court"). *See also State ex rel. Ricco*, 198 Or at 430 (courts have "inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial" and should exercise that power "whenever *public or private interests require*" it. (emphasis added)).

    a.   Private-Interest Factors to Be Considered

Having established the general substantive standard that should guide courts in determining whether the balance of interests sufficiently favors granting a defendant's *forum non conveniens* motion, we turn to an examination of the specific private-interest factors to be considered in reaching that decision. In *Gulf Oil*, the Supreme Court stated that in considering those interests, the trial court should "weigh the relative advantages and obstacles to fair trial." *Gulf Oil*, 330 US at 508. Keeping that in mind, trial courts should consider not only the relative convenience of one forum compared to another, but the consequences that litigating in each forum might have on the plaintiff's access to effective redress, and on both parties' ability to prosecute, or defend, the claims asserted.

The first factor, and often the most important, is "the relative ease of access to sources of proof," including the time, expense and difficulty of obtaining the evidence that

the parties will need to litigate the action, and in particular, whether certain evidence is likely to be unavailable. *Id.* When examining the accessibility of witnesses and evidence for trial, the court should not only determine where evidence is located, but consider the actual and practical burden it would create to try the case in the plaintiff's chosen forum, as compared to the proposed alternative forum. For example, although access to a view of the premises where a tort arose is sometimes helpful to a jury, it may be less so in some cases. Where the site is remote and the parties are likely to rely instead on photographs, videos and expert testimony, an inability to visit that location in person, whether the case proceeds in one forum or another, may be of marginal importance. *See, e.g.*, *Reid-Walen v. Hansen*, 933 F2d 1390, 1398 (8th Cir 1991) (inability to view premises of accident unimportant where defendant failed to establish that view was necessary and where testimony regarding site and demonstrative evidence were adequate).

Similarly, a trial court should not assume or speculate that it will necessarily be burdensome to obtain evidence located in other states or overseas. Consistent with its burden of establishing that the relevant private and public interests weigh so heavily in favor of the alternative forum that the ends of justice require the court to dismiss or stay the action, the moving party must identify specific evidence located in other places that is material to the case and demonstrate that accessing it for purposes of litigating in the plaintiff's chosen forum will be extraordinarily difficult. *See Aveta*, 942 A2d at 609-10 (to prevail on motion to dismiss for *forum non conveniens*, moving party must identify particular, specific evidence necessary to case that it cannot produce in plaintiff's chosen forum); *Pierce v. Albertson's Inc.*, 121 NM 369, 372, 911 P2d 877, 880 (1996) ("The moving party, therefore, has the heavy burden of an early showing of inaccessibility of concrete sources of proof essential to a fair adjudication \*\*\*. Showings of expense and delay and of public interest likewise must be concrete and not speculative.").

When considering whether obtaining evidence located outside the plaintiff's chosen forum is likely to impose an undue burden, the court should consider what means are

available for obtaining that evidence. For example, although a substantial amount of the evidence relevant to the claims and defenses asserted in this case may be found in Peru, and even held by third parties there, mechanisms exist for obtaining that evidence.[25] Although obtaining evidence from another country will always be somewhat inconvenient, difficulties of that sort are inherent in transnational actions and do not necessarily demonstrate an undue burden to litigate in the plaintiff's chosen forum. Whether that is the case will depend on the type of evidence in question, how important it is to the issues in dispute, and the cost and effectiveness of the procedures necessary to obtain access for discovery purposes and for use at trial.[26] Absent any showing on those issues, it is unlikely that the moving party will be able to meet its burden to show that this first factor weighs in favor of a dismissal or stay.

The trial court also must take into consideration the fact that litigating the action in the proposed alternative forum will not necessarily alleviate the burden of discovering relevant evidence and presenting it at trial. Transnational actions, in particular, often involve evidence in multiple locations, and therefore pose some degree of difficulty regardless of where they are tried. When that is the case, the inaccessibility of some evidence in the plaintiff's chosen forum may be counterbalanced by the inaccessibility of other evidence in the alternative forum, such that this

---

[25] Peru and the United States are parties to the Inter-American Convention on Letters Rogatory and its Additional Protocol, which provide means of gathering evidence in Peru to aid litigation in the United States, even when that evidence is held by a third party. *See generally Inter-American Convention on Letters Rogatory*, available at http://www.oas.org/juridico/english/treaties/b-36.html (last accessed Apr 4, 2016) (text of treaty and list of signatories); *Additional Protocol to The Inter-American Convention on Letters Rogatory*, available at http://www.oas.org/juridico/english/treaties/b-46.html, (last accessed Apr 4, 2016) (text of protocol and list of signatories).

[26] To say that routine processes for obtaining evidence from other jurisdictions are available is not to say that it such mechanisms are never unduly burdensome or that they are always adequate substitutes. For example, where a case turns on the credibility of an unwilling third-party witness who is located overseas, a videotaped deposition obtained through a letters rogatory process may be an inadequate substitute for live testimony at trial. As other courts have noted, "depositions serve as poor proxies for live testimony because the fact finder loses the opportunity to effectively and contemporaneously evaluate the credibility of the witness." *Aveta*, 942 A2d at 612-13.

factor weighs little in the court's overall analysis. *See Ison*, 729 A2d at 843 (burden of obtaining evidence was neutral in *forum non conveniens* analysis where evidence was located in multiple countries, including in both alternative forum and plaintiff's chosen forum).

The second private-interest factor encompasses "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 US at 508. One such practical problem might include, for example, language barriers. If much of the key documentary and testimonial evidence is in a foreign language, the expense and difficulty of translation to English could pose a significant obstacle to litigating in the plaintiff's chosen forum. *See, e.g., Aveta*, 942 A2d at 614 (concluding that language barrier was significant factor in *forum non conveniens* analysis where translators would be needed not only for witness testimony but to allow defendant to communicate with counsel). The need for translation, of course, may cut both ways, and some amount of translation may be required regardless of where the action is litigated. Similarly, another practical consideration could be the parties' location and whether they would be required to travel far from home. *See id.* at 1187 (noting location of Puerto Rican defendant in evaluating whether litigation in Rhode Island would cause hardship); *cf. Stangvik*, 54 Cal 3d at 755 (forum presumptively convenient for corporate defendant incorporated and with its principal place of business in that forum).

Also relevant under this factor is the practical burden that forcing the plaintiff to bring its action anew in the alternative forum will create. *See Reid-Walen*, 933 F2d at 1398 ("As part of the *Gilbert* private interest analysis, courts must be sensitive to the practical problems likely to be encountered by plaintiffs in litigating their claim, especially when the alternative forum is in a foreign country."), *Energy Claims*, 2014 UT 13 at ¶ 37 (in weighing private interests, "courts must take into account the practical burden plaintiffs will face in filing a new action after dismissal for *forum non conveniens*"). For example, the plaintiff may be faced with procedural rules in the alternative forum that make it more difficult to initiate and sustain its action, such as an inability to pursue claims on a contingent fee basis,

restrictions on types of damages recoverable, limited pretrial discovery rules, or mandatory fee-shifting. *See id.*; *see also Picketts*, 215 Conn at 506-08 (acknowledging that plaintiff whose action is dismissed for *forum non conveniens* may face procedural differences in alternative forum, such as more restrictive discovery rules, that undermine its ability to obtain redress there); *Ison*, 729 A2d at 845 (where no other actions pending, trial court should consider cost and prejudice that would result from dismissal, including, for example, how far discovery has commenced and whether that process would have to begin anew in alternate forum). As discussed, the practical burden that the plaintiff will face in the alternative forum might be so extreme that that forum cannot offer an effective remedy, rendering it inadequate at the first step of the court's analysis. Even when the proposed alternative forum is adequate for purposes of the first step in the analysis, however, such practical repercussions are relevant to whether trying the action in that forum would be easy, expeditious and efficient. *See, e.g.*, *Reid-Walen*, 933 F2d at 1399 (concluding that where trying case in alternative Jamaican forum was practically and financially infeasible for plaintiff, that was important factor weighing against dismissal).

Another private-interest factor is the extent to which the defendant may seek to implead or join third parties and the jurisdictional and logistical ease with which that can be done in the alternative forum compared to plaintiff's chosen forum. *See Piper Aircraft*, 454 US at 259 (recognizing that "the problems posed by the inability to implead potential third-party defendants" in plaintiff's chosen forum supported holding trial in alternative forum). The importance of this factor will depend on the context. If the court finds that there is an indispensible party that cannot be made a part of the action in the plaintiff's chosen forum, that factor may weigh heavily in favor of dismissal.[27] *See Radeljak v. Daimlerchrysler Corp.*, 475 Mich 598, 609, 719 NW2d 40, 45 (2006) (defendant's inability to implead persons or entities partially responsible for plaintiffs' injuries significant factor

---

[27] Moreover, in such a case, the court's inability to join an indispensible or necessary party may be an independent ground for dismissal under ORCP 29.

weighing in favor of dismissal for *forum non conveniens*). On the other hand, where there is no compulsory joinder issue, it is not necessarily unreasonable to require a defendant to pursue indemnification or contribution claims against other parties by the way of a separate action in a different forum.[28] *See, e.g.*, *Ison*, 729 A2d at 846 (concluding that where defendant made no attempt to implead third-parties and where inability to do so would not create overwhelming hardship for defendant, that factor was illusory did not require dismissal of action for *forum non conveniens*).

Finally, an additional private interest that sometimes is relevant is the potential difficulty of enforcing a judgment obtained in the alternative forum. *Gulf Oil*, 330 US at 508. As noted, when a judgment obtained in the alternative forum is likely to be unenforceable, that forum is inadequate and the defendant's motion will fail at the first step. Even when that is not the case, however, and the judgment will be merely difficult to enforce, the burden of doing so may still weigh against compelling the plaintiff to try its action in the alternative forum. *See Carijano*, 643 F3d at 1231-32 (concluding that where defendant had not agreed to accept enforcement of Peruvian judgment, potential difficulty of doing so was relevant private-interest factor weighing against dismissal so that action may be tried in Peru).

b.    Public-Interest Factors to Be Considered

In addition to the private interests of the parties, *Gulf Oil* provides that the court also may consider public-interest factors that are relevant to the administration of justice generally. 330 US at 508-09. One important public-interest factor is the extent to which either forum has an interest in, and connection to, the underlying controversy. *Id.* at 509; *Pain v. United Technologies Corp.*, 637 F2d 775, 791 (DC Cir 1980), *cert den*, 454 US 1128 (1981), *overruled in part on other grounds by Piper Aircraft*, 454 US at 241 ("[T]he central question which a court must answer when

---

[28] Here, the parties dispute whether certain contractual arrangements between Evergreen and Helinka would allow Evergreen to compel Helinka to appear in Oregon. We express no opinion on that issue or on the issue of whether Helinka could be considered an indispensible party.

weighing the *public* interests in the outcome and administration of a case such as this is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it.").

Often, a forum's interest in a particular case will be strongest when the events that gave rise to that action took place within the forum, or when a large number of affected persons are located there. In *Gulf Oil*, the Court noted that "[i]n cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." 330 US at 508-09. A forum also may have a strong interest in providing redress to its own residents, regardless of where the activity giving rise to the action occurred or who else is affected. *See Stangvik*, 54 Cal 3d at (noting that a "state has a strong interest in assuring its own residents an adequate forum for the redress of grievances "and that until recent statutory enactment, dismissal for *forum non conveniens* was not permitted if plaintiff was California resident).

On the other hand, a forum's interest in a particular controversy is not contingent on whether the plaintiff is a forum resident or on whether the events that gave rise to liability occurred there. The fact that the defendant is a forum resident can be a relevant consideration also in determining the forum's connection to an action. *See Stangvik*, 54 Cal 3d at 760 (court may consider defendant corporation's connection to forum, given that it was incorporated in and had its principal place of business there, in determining forum's interest in action and deciding *forum non conveniens* motion). For example, regardless of whether any of the alleged wrongful conduct occurred there, a forum may have some interest in providing a place where claims against its own corporate residents may be heard. *See Picketts*, 215 Conn at 502 ("Connecticut continues to have a responsibility to those foreign plaintiffs who properly invoke the jurisdiction of this forum; especially in the somewhat unusual situation where it is the forum resident who seeks dismissal." (internal quotation marks and brackets omitted)); *see also* Margaret Stewart, *Forum Non Conveniens: A Doctrine in*

*Search of A Role*, 74 Cal L Rev 1259, 1282 (1986) (discussing sovereign's interest in providing forum for obtaining redress from its own corporate residents, especially when jurisdiction elsewhere is uncertain).

Another public-interest factor that is sometimes considered is whether litigating the action in the plaintiff's chosen forum is likely to involve significant administrative difficulties, or impose a particularly great burden on the court system. *Gulf Oil*, 330 US at 508-09. For example, when an action with minimal connection to a forum is likely to undermine the administration of justice generally by consuming substantial resources that would otherwise be available to other litigants, that factor may weigh in favor of dismissing or staying the action. *See, e.g.*, *Stangvik*, 54 Cal 3d at 763 (upholding stay of action for *forum non conveniens* where forum had minimal interest in action and it would unduly burden California court system). However, the doctrine of *forum non conveniens* is not a mechanism for courts to control their dockets, and the resolution of disputes is in fact the courts' *raison d'etre*. While impacts on the judicial system may be relevant to whether a dismissal or stay would promote the ends of justice overall, such considerations ordinarily will not take precedence over the private interests of the litigants or the interest of the forum itself in the underlying dispute. *See First Am. Bank*, 198 Ill 2d at 517 ("Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly.").

A final public-interest factor that some courts have identified is whether litigating the action in the plaintiff's chosen forum implicates conflicts of laws issues that pose practical difficulties for the court. As the United States Supreme Court noted in *Gulf Oil*:

> "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

330 US at 509. When the court in the plaintiff's chosen forum will be required to apply the law of another country,

and when doing so will be difficult for the court, that too may weigh in favor of requiring the plaintiff to litigate its action in the alternative forum. *See, e.g.*, *Archangel Diamond Corp. Liquidating Trust v. Lukoil*, 812 F3d 799, 808 (10th Cir 2016) (trial court did not abuse discretion in dismissing action for *forum non conveniens* where it concluded that interpreting and applying Russian law would impose significant administrative burden on court in plaintiff's chosen forum).

As noted, however, what law will apply to an action may not be clear at the early stage of litigation at which the issue of *forum non conveniens* is typically raised. That is particularly so for transnational tort actions involving parties domiciled in different jurisdictions and stemming from conduct in multiple locations. In cases such as those, the trial court may be unable to determine which law applies without resolving factual issues that go directly to the merits, such as whose conduct caused the injury, and where those conduct occurred. *See, e.g.*, ORS 15.440 (setting out general rules for choice of law determinations for tort claims); *cf. D'Agostino*, 115 NJ at 496-97 (trial court unable to resolve motion to dismiss for *forum non conveniens* based on choice-of-law considerations when, in absence of discovery, there were insufficient facts to perform that analysis).

Moreover, even when the court can determine with some degree of certainty that foreign law will apply to the action, it is not necessarily the case that applying that law will impose an unreasonable burden. *See Picketts*, 215 Conn at 512 ("Connecticut courts are quite capable of applying foreign law when required to do so and it would be improper to invoke the doctrine of *forum non conveniens* solely to avoid a choice of law analysis."); *cf. DiRienzo v. Philip Servs. Corp.*, 294 F3d 21, 31 (2d Cir 2002) (on motion to dismiss for *forum non conveniens*, factor of avoiding application of foreign law was neutral, since both foreign and United States law would apply in part). Oregon courts are competent to apply the law of other jurisdictions, including other countries, and sometimes do so, particularly when the foreign law is relatively simple, similar to that in the United States, and in the same language. *See, e.g.*, *Fisher v. Huck*, 50 Or App 635, 642-43 624 P2d 177, *rev dismissed*, 291 Or 566 (1981) (concluding

that British Columbia law applied to tort action arising from automobile accident in British Columbia; remanding to trial court to apply correct law). Thus, while choice-of-law considerations may be relevant, a trial court need not always give them significant weight in its *forum non conveniens* analysis.

To summarize, in Oregon, courts considering a motion to dismiss or stay an action for *forum non conveniens* should apply a two-step analysis to determine whether to grant such a motion. At the first step, the court must consider whether there is an adequate alternative forum in which to try the action. If the alternative forum is inadequate, the defendant's motion should be denied. If the alternative forum is adequate, the court proceeds to the second step, where it considers the relevant private and public interests to determine whether, on the whole, those interests weigh so heavily in favor of the alternative forum that that it would be contrary to the ends of justice to allow the action to proceed in the plaintiff's chosen forum. At each stage of the *forum non conveniens* inquiry, the burden remains with the moving party to establish those underlying facts necessary for the court to decide the appropriateness of a stay or dismissal. Consistent with that burden, and the standard for a motion to dismiss generally, a court considering a defendant's motion to dismiss for *forum non conveniens* must accept as true all well-pleaded facts alleged in the plaintiff's complaint, and give the plaintiff, as the non-moving party, the benefit of all favorable inferences that might be drawn from those facts.

4.  *Application of Forum Non Conveniens to Plaintiffs' Actions*

We turn now to the application of *forum non conveniens* in this case. We begin with the appropriate standard of review. It is well-settled law in other jurisdictions that whether to dismiss or stay an action for *forum non conveniens* is committed to the sound discretion of the trial court. *See Piper Aircraft*, 454 US at 238 (stating standard of review); *Stangvik*, 54 Cal 3d at 751 (same). That standard is consistent with the manner in which we review similar trial court rulings. *See, e.g.*, *Bremner v. Charles*,

312 Or 274, 278-80, 821 P2d 1080 (1991)[29] (order to bifurcate liability and damages phases of trial); *Reed*, 194 Or at 57 (dismissal of action for want of prosecution); *Horner v. Pleasant Creek Min. Corp.*, 165 Or 683, 703-04, 107 P2d 989 (1940), *reh'g den*, 165 Or 683 (1941) (decision whether to assume jurisdiction over action instituted by foreign plaintiff against foreign corporation "a matter within the sound judicial discretion of the trial court."). We conclude that the decision of a trial court to dismiss or stay an action for *forum non conveniens* also should be reviewed for abuse of discretion.

In considering that standard, it is helpful to understand what we mean by "discretion." When a trial court exercises discretion, it acts within certain legal boundaries to choose from several permissible outcomes:

> "Judicial discretion should * * * be exercised according to fixed legal principles in order to promote substantial justice. * * * In short, judicial discretion is always bounded by a simple framework: It must be lawfully exercised to reach a decision that falls within a permissible range of legally correct outcomes."

*State v. Harrell/Wilson*, 353 Or 247, 254, 297 P3d 461 (2013) (internal citations and quotation marks omitted)*; see also State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) ("[D]iscretion, as this court has used that term, refers to the authority of a trial court to choose among several legally correct outcomes."). In deciding a *forum non conveniens* motion, the trial court exercises discretion in several respects: by determining what private- and public-interest factors to consider, whether evidence in the record demonstrates that those factors weigh in favor of the dismissal or stay of the action, and ultimately, whether the ends of justice require stay or dismissal of the action.

In making those determinations, a trial court can exceed the bounds of its permitted discretion in several ways. First, a trial court's decision may be legally impermissible because it was guided by the wrong substantive

---

[29] *Modified on recons*, 313 Or 339 (1992), *cert den*, 506 US 975 (1992), *adh'd to as modified on recons*, 315 Or 291 (1993).

standard. *See [State v. Sarich](#)*, 352 Or 600, 615, 291 P3d 647 (2012) (as prerequisite to exercise of discretion, court must apply correct legal standard for determining scope of that discretion). Because whether a trial court applied the correct substantive standard to guide its decision is a question of law, we review that issue for legal error. *See id.* at 615-17 (reviewing for legal error whether trial court applied correct standard for determining competency of witness).

Second, a trial court may abuse its discretion if its decision is based on predicate legal conclusions that are erroneous or predicate factual determinations that lack sufficient evidentiary support. For example, in order to weigh the private interests at stake, a trial court deciding a *forum non conveniens* motion must make factual findings about the availability of relevant evidence in each forum. Likewise, the court may draw and rely on legal conclusions about the choice of law applicable to the action, or the enforceability of a judgment from the alternative forum. We review the trial court's predicate legal conclusions "without deference to determine whether proper principles of law where applied correctly," *Rogers*, 330 Or at 312, and its predicate factual findings—express or implicit—for any evidence in the record to support them. *See [State v. Davis](#)*, 345 Or 551, 564-65, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009) (where trial court ruling depends on resolution of disputed factual issues, "we will not disturb the trial court's express or implicit factual findings so long as those findings are supported by evidence"); *see also [State v. Washington](#)*, 355 Or 612, 630, 330 P3d 596, *cert den*, 135 S Ct 685 (2014) (applying any evidence standard to factual findings predicate to trial court exercise of discretion in requiring criminal defendant to be restrained at trial).

Finally, even when the correct law is applied and there is sufficient evidentiary support for underlying factual findings, a trial court abuses its discretion if its decision is clearly against all reason and evidence. *See Port of Umatilla v. Richmond*, 212 Or 596, 625, 321 P2d 338 (1958) ("abuse of discretion" is "a clearly erroneous conclusion and judgment—one that is clearly against the logic and effect of such facts as are presented in support of the application, or

against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing.'" (citing *State v. Draper*, 83 UT 115, 27 P2d 39, 49-50 (1933)).

Here, plaintiffs contend that the trial court abused its discretion in several respects. They take issue with the substantive standard that the trial court applied to guide its decision, arguing that the trial court failed to give sufficient deference to their choice of Oregon as the forum in which to litigate their claims. Plaintiffs also argue that the trial court abused its discretion by failing to accept as true the well-pleaded allegations in their complaints. Pointing to the court's statements at oral argument and in its letter opinion, plaintiffs assert that the trial court made factual determinations that went to the underlying merits of their claims and that it based its decision at least in part on those determinations and on its own view of the relative strength of the claims asserted, all without the benefit of merits discovery. As a result, plaintiffs argue, the trial court failed to give sufficient credit to all of their claims and struck an unreasonable balance in weighing the relevant private- and public-interest factors, leading to an outcome—dismissal of the action—that was an abuse of the trial court's discretion. For the reasons stated below, we conclude that the trial court erred as a matter of law by applying the wrong substantive standard to guide its decision and by failing to accept as true plaintiffs' well-pleaded allegations.[30]

As described above, the first step in the *forum non conveniens* analysis is whether there is an adequate alternative forum in which the action may be tried. Consistently with that standard, the trial court first considered, as a threshold issue, whether Evergreen demonstrated that there was an adequate alternative forum available. The trial court concluded that Evergreen had met its burden, because Peruvian courts were available to try the action and plaintiffs had conceded in their briefing before that court that Peru offered an adequate alternative forum. The court did

[30] Because we conclude that the trial court failed to apply the correct substantive standard to guide its discretion, we do not consider whether the trial court abused its discretion in either balancing the private- and public-interest factors relevant to this case, or in concluding that the dismissal of plaintiffs' actions would best serve the ends of justice.

note that plaintiffs later contended that Peruvian courts were inadequate, on the ground that the relevant statutes of limitations had run in Peru. However, because Evergreen agreed to waive any statute of limitations defenses it might have otherwise raised in Peru, the trial court concluded that nothing would prevent plaintiffs from pursuing their claims in that forum.

Evergreen did present evidence to the trial court that Peru offered comparable legal remedies for wrongful death and that plaintiffs could obtain redress in Peru through those remedies. In response, the only issue that plaintiffs raised before the trial court was that the statute of limitations for those claims had run in Peru., Plaintiffs neither asserted nor presented any evidence to the trial court that those remedies were defective in any other way, that the Peruvian legal system was incapable of providing relief, or that a judgment obtained there would not be enforceable against Evergreen.[31] As a result, the trial court did not err in concluding, based on the evidence presented to it, that Peru offered an adequate alternative forum.

At the second step in its *forum non conveniens* analysis, however, the trial court erred by applying the wrong substantive standard for when a dismissal or stay on that ground is appropriate. As noted, when considering whether an action should be dismissed or stayed for *forum non conveniens*, a trial court's discretion is limited. It cannot grant a defendant's *forum non conveniens* motion "simply because another forum, in the court's view, may be superior to that chosen by the plaintiff.'" *Picketts*, 215 Conn at 501 (citing *Pain*, 637 F2d at 783). Rather, under the standard we have articulated, the moving party must affirmatively establish that the relevant private- and public-interest factors weigh so heavily in favor of dismissing or staying the action that allowing it to proceed would be contrary to the ends of justice.

---

[31] As noted, plaintiffs raised the argument that Peruvian courts were fundamentally inadequate due to corruption and other institutional defects for the first time before the Court of Appeals. That court declined to consider the issue because it was not preserved. *Espinoza*, 266 Or App at 47-48. It does not appear that plaintiffs raised the issue of whether a judgment against Evergreen obtained in Peru would be enforceable in Oregon.

In this case, the trial court appears to have applied a less stringent standard. In its letter opinion, the trial court stated that dismissal is permitted if, after determining that there is an adequate alternative forum, the court concludes "that trying the action elsewhere would *best serve* the convenience of the parties and the ends of justice." (Emphasis added.) Concluding that "trial of this lawsuit will largely center on, and depend upon, witnesses and documents regarding circumstances in Peru at the time of the crash, rather than circumstances in Oregon or the United States" such that "the private and public interest factors *weigh in favor of dismissal*," the trial court appears to have granted Evergreen's motion primarily, if not exclusively, on the ground that litigating the actions in Peru would be simply *more* convenient. (Emphasis added.) The trial court stated that the ends of justice would be "best served" by trial in Peru, but not that trial in Oregon would be so inconvenient as to be contrary to the ends of justice. Because the trial court therefore applied the wrong substantive standard to guide its decision, it abused its discretion in granting Evergreen's motions to dismiss.

The trial court also applied the wrong substantive standard to guide its decision by failing to "assume the truth of all well-pleaded facts alleged in the complaint and give plaintiff[s], as the nonmoving part[ies], the benefit of all favorable inferences that may be drawn from those facts." *Bradbury*, 328 Or at 393. Although it is entirely appropriate for a trial court to resolve factual issues related to the ease with which the parties might prove, or disprove, facts material to the merits of their dispute, by deciding, for example, where certain evidence is located, a trial court may not rely on factual findings that contradict—implicitly or expressly—the well-pleaded allegations in the plaintiff's complaint.

Here, plaintiffs' complaints contained factual allegations that would support both direct negligence and vicarious liability claims against Evergreen. In particular, plaintiffs alleged that Evergreen "fail[ed] to properly maintain, inspect, test and/or repair the subject helicopter and ensure that the subject helicopter was kept in a safe condition" and that those failures were "[a] substantial factor in causing the crash and [decedents'] injuries." There is no dispute that

Evergreen performed work on the helicopter's mechanical systems in the months just prior to the crash, or that the helicopter had been in use for only a matter of weeks when the crash occurred.

Despite plaintiffs' well-pleaded allegations, the trial court appears to have based its decision, at least in part, on its determination that mechanical systems installed and tested by Evergreen in Oregon played no role in the crash, and that pilot error instead was its cause. For example, in its letter opinion, the trial court stated that it would not base its decision on the possibility that the crash resulted from "a malfunction in the warning or altimeter systems installed by Evergreen in the United States" and dismissed as speculative plaintiffs' contention that discovery might reveal evidence of such a defect.

That the trial court made factual findings that contradicted the well-pleaded allegations in plaintiffs' complaint is supported further by the parties' arguments before that court. When arguing in favor of its motion, Evergreen relied heavily on the contention that, because there was little evidence to support plaintiffs' theory that a mechanical failure was the cause of the crash, the trial court should give that claim, and the evidence in Oregon pertinent to it, little weight in assessing which forum has a greater connection to the litigation and in which location most of the relevant evidence was likely located. Further, at the hearing on Evergreen's motion, the parties discussed the evidentiary support for plaintiffs' mechanical failure theory, and, as part of that exchange, the trial court specifically asked plaintiffs' counsel what evidence they had that a mechanical failure was the cause of the crash:

> "[PLAINTIFFS' COUNSEL]: And then maybe another key either to causation or to debunk a defense is really going to be what's going on with that enhanced ground proximity warning system. It was installed just two months before it took off here. It was tested and inspected here. It was cleared here, and yet there were squawks and things that we know nothing about that Evergreen's people found on this system.
>
> "* * * * *

"THE COURT:   Where in the record will I find this—the squawks that you referred to?

"[PLAINTIFFS' COUNSEL]: Unfortunately, we don't have the squawks.

"\* \* \* \* \*

"[PLAINTIFFS' COUNSEL]:   Could I just start by talking about what the systems are and giving the Court just a brief explanation about them?

"THE COURT: You can. But I think I understand. \*\*\* *What I'm interested in is what evidence do you have that there was potentially some issue associated with [the mechanical systems on the helicopter]?*"

(Emphasis added.)

Rather than assuming the truth of plaintiffs' well-pleaded allegations and limiting its factual findings to those issues outside the pleadings that the trial court needed to resolve to dispose of Evergreen's motion, the trial court instead looked to plaintiffs to identify evidence in the record to support those allegations. When it found such evidence lacking, the trial court appears to have made its own, contrary, finding as to the probable cause of the crash. Insofar as it based its decision, at least in part, on that determination, the trial court failed to accept as true the well-pleaded factual allegations supporting plaintiffs' direct negligence claims, erred as a matter of law, and abused its discretion in granting Evergreen's motions. *Cf.*, *Koss Corp. v. Sachdeva*, 363 Ill Dec 434, 446-44, 975 NE2d 236, 248-49 (Ill Ct App), *rev den*, 981 NE2d 998 (Ill 2012) (trial court abused discretion when it disregarded some of plaintiff's allegations as lacking support in record, and as a result, failed to consider all of plaintiffs claims in determining whether dismissal for *forum non conveniens* was appropriate).

Evergreen argues that we should not require trial courts to accept all well-pleaded allegations as true, because that standard makes it possible for a plaintiff to avoid dismissal for *forum non conveniens* by asserting meritless theories and claims to link its action to the forum it has chosen. Evergreen's argument is not well-taken. Although styled as a motion to dismiss when raised by a defendant, the purpose

and function of *forum non conveniens* is not to test the sufficiency of a plaintiff's complaint. Rather, *forum non conveniens* allows the court and the parties to *avoid* considering the merits of an action, at least at that early stage, precisely because the defendant claims that the plaintiff's chosen forum is unsuited to that task. *See Sinochem*, 549 US at 432 ("A *forum non conveniens* dismissal denies audience to a case on the merits;" "it is a determination that the merits should be adjudicated elsewhere." (internal citation and quotation marks omitted)). It is for that reason that defendants typically raise the issue of *forum non conveniens* at the outset of a case, before any merits discovery has taken place.

Considering the purpose and function of the doctrine of *forum non conveniens*, we see no reason to depart from the well-established standard for deciding motions to dismiss of accepting as true the well-pleaded allegations in the complaint. As noted by another appellate court faced with the same issue, "[i]t is unreasonable to require a plaintiff to prove up its entire case on a motion to dismiss for *forum non conveniens* where a defendant, with its greater evidentiary burden, has no such obligation." *Koss*, 363 Ill Dec at 446. If a defendant truly believes that some of the plaintiff's claims are insufficiently pled or that they lack merit, nothing would bar it from filing a motion to dismiss for failure to state a claim, or even a motion for summary judgment. *See id.* at 446-47 (arguments that plaintiff's allegations are conclusory or that they fail to state a claim cannot be properly addressed through *forum non conveniens* motion; defendant should raise such issues by separate motion). Likewise, nothing would prevent a court from deciding, on an appropriate motion and under the correct legal standard, that a claim should be dismissed and thus not considered in determining whether the action should be dismissed or stayed on *forum non conveniens* grounds.

On this record, the cause of the crash is disputed, and while the trial court was undoubtedly and appropriately concerned that much of the evidence concerning the crash would be found in Peru, it appears as though the trial court did not consider the possibility that a significant amount of documentary and testimonial evidence pertinent

to plaintiffs' direct negligence claims is likely to be found in Oregon. Plaintiffs' complaints contained sufficient factual allegations to state a claim upon which relief could be granted on that theory. To the extent that the trial court, having concluded that plaintiffs' direct negligence claims were speculative and weak, discounted the importance of evidence in Oregon that would have been relevant to those claims, it not only failed to give sufficient credit to the well-pleaded allegations in plaintiffs' complaints, it veered into the merits of the dispute at a stage in the litigation when it was poorly equipped to do so.

## III.  CONCLUSION

For the reasons discussed above, we hold that the doctrine of *forum non conveniens* is part of the common law of this state. When a party moves to dismiss or stay an action on that ground, the court may grant the motion if that party demonstrates that an alternative forum is available and adequate, and that the relevant private- and public-interest considerations weigh so heavily in favor of a dismissal or stay that allowing the litigation to proceed would be contrary to the ends of justice. Because the trial court failed to apply that standard in its dismissal of plaintiffs' claims, and likewise, consistent with the posture of a motion to dismiss, failed to accept plaintiffs' well-pleaded allegations as true, it erred as a matter of law and exceeded the bounds of its discretion.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.